[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 13, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15471

_____

D. C. Docket No. 01-03399-CV-FAM

ANGEL ENRIQUE VILLEDA ALDANA,
JORGE AUGUSTIN PALMA ROMERO, et al.,

Plaintiffs-Appellants,

versus

DEL MONTE FRESH PRODUCE N.A., INC.,
BANDEGUA, Compania De Desarrollo De Guatemala, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 13, 2009)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

At issue in this appeal is whether the district court abused its considerable

discretion in dismissing the appellants' suit on <u>forum non conveniens</u> grounds. The seven appellants (Angel Enrique Villeda Aldana, Jorge Agustin Palma Romero, Oscar Leonel Guerra Evans, Lyionhel McIntosch Rodriguez, Marel Martinez, Gumerzindo Loyo Martinez, and Rigoberto Alvayero Hernandez) allege that they were tortured in retaliation for their leadership of a Guatemalan national labor union in violation of the Alien Tort Act ("ATA") and the Torture Victim Protection Act of 1991 ("TVPA"). Having extensively analyzed the adequacy of a Guatemalan forum, and the various private and public interests involved in the case, the district court granted appellees' (Fresh Del Monte Produce Inc., Compañía de Desarollo Bananero de Guatemala, S.A. ("Bandegua"), and Del Monte Fresh Produce Company) motion to dismiss. After thorough review, we discern no clear abuse of discretion, and, accordingly affirm.

## I. Background

### A. Factual Background

The underlying suit in this case arose out of a protracted labor dispute that took place in Guatemala in 1999. At that time, SITRABI, a Guatemalan national trade union of plantation workers, was negotiating a new collective bargaining agreement for workers at a large banana plantation owned by Bandegua, a wholly-owned subsidiary of Del Monte, located in the municipality of Morales, Izabal.

During the negotiations, Bandegua terminated 918 workers. In response, SITRABI filed a complaint in the Labor Court of Guatemala. Thereafter, Bandegua allegedly hired a private armed security force to intimidate the appellants, all of whom were SITRABI officials. Specifically, the complaint alleges that on the evening of October 13, 1999, the security force -- consisting of over 200 heavily armed men -- arrived at SITRABI's headquarters in Morales. They held two of the appellants hostage, threatening to kill them, and shoving them with guns. As the evening wore on, other SITRABI leaders were lured or forced to come to the union's headquarters, where they, too, were held hostage.

All seven appellants were then harangued by the leader of the security force, who claimed to be the president of the municipal chamber of commerce. He complained that their union activities had caused the economic difficulties that had developed in the area. The mayor of Morales and a mayoral candidate later arrived on the scene. A decision was made to take two of the appellants to a radio station. They claim they were forced at gunpoint to denounce the union, to declare that they were resigning, and to announce that the labor dispute was over.

The two appellants were then taken back to the headquarters, where they were presented with a resignation form allegedly faxed from Del Monte or Bandegua. After signing the forms at gunpoint, the appellants were released. In

all, they had been detained for roughly eight hours. They were warned by the leader of the security force that they would be killed if they refused to leave Guatemala or relocate to Mexico. All of the appellants subsequently moved to the United States. As part of an agreement with the Guatemalan government, they were granted political asylum in the United States in exchange for agreeing to testify in Guatemala against their alleged attackers.

**B.     Relevant Procedural History**

We address the lengthy procedural history of this case because it is essential to understanding our resolution of the appeal. The appellants filed their complaint in the United States District Court for the Southern District of Florida on August 2, 2001. The complaint asserted causes of action for torture under both the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, and the Alien Tort Act ("ATA") (or the Alien Tort Statute ("ATS")), 28 U.S.C. § 1350.[1] They also alleged causes of action arising under the ATA for arbitrary detention, crimes against humanity, and cruel, degrading, and inhumane treatment. In addition, the complaint advanced various claims under Florida's tort laws.

In 2003, the appellees moved to dismiss the case on the grounds of forum

---

[1] The TVPA is codified as a historical and statutory note to the ATA. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1246 (11th Cir. 2005).

non conveniens. The district court denied the motion.[2] Villeda Aldana v. Fresh Del Monte Produce, Inc., No. 01-3399, slip op. (S.D. Fla. June 5, 2003). In a subsequent ruling, however, the court dismissed the complaint, holding that the conduct alleged did not amount to torture under the TVPA or ATA, and also because diversity jurisdiction was lacking. Villeda Aldana v. Fresh Del Monte Produce, Inc., 305 F. Supp. 2d 1285, 1308 (S.D. Fla. 2003). The trial court also declined to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Id.

The appellants appealed the dismissal to this Court, while simultaneously bringing their state law claims in Florida's circuit court in Dade County. Appellees, in turn, moved the state court to dismiss on forum non conveniens grounds. One central point of contention was whether, given the concern for the appellants' safety, they would be required to attend the proceedings if the suit were litigated in Guatemala. After hearing expert testimony from each side, the state court accepted appellees' claim that, under Guatemalan law, the appellants would not be required to return. However, as a precautionary measure, the court said that it would reconsider its dismissal order if the appellants were in fact required to return to Guatemala in connection with the trial. That decision was affirmed by an

---

[2] Subsequently, the court also denied appellants' motion to reconsider the order and its motion to certify the issue for interlocutory appeal.

intermediate appellate court in Florida. Aldana v. Fresh Del Monte Produce Inc., 922 So. 2d 212 (Fla. Dist. Ct. App. 2006) (table).

In the meantime, a panel of this Court affirmed the district court's dismissal of all of the appellants' claims except the torture claims arising under the Alien Tort Act and the Torture Victim Protection Act. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1253 (11th Cir. 2005) (per curiam), en banc reh'g denied, 452 F.3d 1284 (11th Cir. 2006), cert. denied, 127 S. Ct. 596 (2006). After the case was remanded to the district court, the appellees again moved to dismiss on forum non conveniens grounds. The matter was referred to a magistrate judge, who, after holding a hearing, issued a Report and Recommendation ("R&R") recommending that the motion be denied.

After reviewing the R&R, however, the district court rejected the magistrate judge's recommendations and granted appellees' motion to dismiss. Villeda Aldana v. Fresh Del Monte Produce, Inc., No. 01-3399-CIV, 2007 WL 3054986, at *1 (S.D. Fla. Oct. 16, 2007). In particular, the district court concluded that it was precluded under the doctrine of collateral estoppel, and by the Full Faith and Credit Act, 28 U.S.C. § 1783, from relitigating issues decided by the state court's forum non conveniens decision. Following the state court's findings where necessary, the district court thus found that each prong of the forum non conveniens inquiry

favored dismissal. As we discuss in greater detail below, the district court found that Guatemala afforded the appellants an adequate alternative forum for the resolution of their claims; and that all of the relevant private interest and public interest factors weighed heavily in favor of having the dispute adjudicated in Guatemala. Like the state court, however, the district court added that the dismissal was "without prejudice to Plaintiff's right to seek reconsideration if any of the Plaintiffs are required to appear in person in Guatemala in order to litigate their claims." Id. at *6.

This timely appeal followed.

## II. Standards of Review

We review de novo whether the district court erred in failing to adhere to its initial order denying appellees' forum non conveniens motion as the law of the case. Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1331 (11th Cir. 2005) ("We review application of the law of the case doctrine de novo."); Alphamed, Inc. v. B. Braun Med., Inc., 367 F.3d 1280, 1285 (11th Cir. 2004). The question whether to give preclusive effect to a state court's judgment is a question of law, and thus also is reviewed de novo. See, e.g., Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 993 (9th Cir. 2001) ("Because deciding whether to apply issue preclusion (also referred to as collateral estoppel) is a question of law, we

review de novo a district court's refusal to give a state court judgment preclusive effect.").

It is also well settled in our decisional law that "[w]e may only reverse a district court's dismissal based on forum non conveniens if it constitutes a clear abuse of discretion." Membreno v. Costa Crociere S.p.A., 425 F.3d 932, 935-36 (11th Cir. 2005). And it is well settled that abuse of discretion review is "extremely limited" and "highly deferential." In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007) (United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001)); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981) ("[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."). Thus, when we employ the abuse of discretion standard, "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). Notably, abuse of discretion review acknowledges that "there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001).

### III. Law of the Case

Appellants first argue as a threshold matter that the district court was prohibited by the law of the case doctrine from reconsidering its earlier order denying the appellees' first forum non conveniens motion to dismiss. We find little merit in this claim.

Under the law of the case doctrine, "an issue decided at one stage of a case is binding at later stages of the same case." United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997). Notably, however, "a court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court." Vintilla v. United States, 931 F.2d 1444, 1447 (11th Cir. 1991) (quotation marks omitted). "Consequently, 'law of the case applies only where there has been a final judgment.'" Id. (quoting Gregg v. United States Indus., Inc., 715 F.2d 1522, 1530 (11th Cir. 1983)). Here, the district court's first forum non conveniens judgment was not final. Van Cauwenberghe v. Biard, 486 U.S. 517, 527 (1988) ("We conclude, however, as have the majority of the Courts of Appeals that have considered the issue, that the question of the convenience of the forum is not completely separate from the merits of the action, and thus is not immediately appealable as of right.") (quotation marks and citations omitted); Ford v. Brown, 319 F.3d 1302, 1304 n.2 (11th Cir. 2003) (although forum non conveniens order

was nonfinal, court of appeals had jurisdiction to review it pursuant to 28 U.S.C. § 1292(b)). Hence, the district court's initial decision did not constitute the law of the case.

Moreover, even if the district court's first forum non conveniens decision had constituted the law of the case, the district court still would have acted permissibly in departing from it. As we have explained, the "law of the case doctrine does not . . . require rigid adherence to rulings made at an earlier stage of a case in all circumstances." Murphy v. F.D.I.C., 208 F.3d 959, 966 (11th Cir. 2000). In particular, we have carved out three principal exceptions to the law of the case doctrine: "when (1) a subsequent trial produces substantially different evidence (2) controlling authority has since made a contrary decision of law applicable to that issue or (3) the law-of-the-case is clearly erroneous and will work manifest injustice if not if not reconsidered." Culpepper v. Irwin Mortg. Corp., 491 F.3d 1260, 1271 (11th Cir. 2007) (quotation marks omitted).

The second of the exceptions is applicable here: the state court's forum non conveniens dismissal is a contrary decision of law applicable to the issue made by a controlling legal authority. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the district court was bound in significant measure by the opinion of the state court, which was issued after the district court initially denied appellees' forum

<u>non conveniens</u> motion to dismiss.

Hence, the district court's initial order denying the appellees' <u>forum non conveniens</u> motion to dismiss does not constitute the law of the case, and the district court was accordingly free to reconsider the issue and reach a different conclusion regarding the instant <u>forum non conveniens</u> motion.

### IV. The District Court's <u>Forum Non Conveniens</u> Analysis

It is by now clear that the <u>forum non conveniens</u> test used by Florida state courts is identical to the test applied by the federal courts. Indeed, the Florida Supreme Court has explicitly adopted the federal law of <u>forum non conveniens</u>. <u>See</u> <u>Kinney Sys., Inc. v. Cont'l Ins. Co.</u>, 674 So.2d 86, 93 (Fla. 1996) ("[W]e are persuaded that the time has come for Florida to adopt the federal doctrine of forum non conveniens."); <u>see also</u> <u>Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.</u>, 179 F.3d 1279, 1283 n.2 (11th Cir. 1999) (noting that in <u>Kinney</u>, the Florida Supreme Court adopted the federal courts' <u>forum non conveniens</u> analysis as announced in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1946)). Under both bodies of law, a <u>forum non conveniens</u> dismissal is appropriate where:

> (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
>
> (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

Del Campo Bacardi v. De Lindzon, 845 So. 2d 33, 36 n.1 (Fla. 2002) (citing Fla. R. Civ. P. 1.061); see also Membreno, 425 F.3d at 937.

We believe the district court adequately performed each step of the forum non conveniens analysis, and did not abuse its discretion in concluding that the appellees met their burden to establish that a dismissal on forum non conveniens grounds was warranted.

## A.    Adequate Alternative Forum

The appellants first challenge the district court's conclusion that the initial "adequate alternative forum" prong of the forum non conveniens inquiry was fully met. The first prong of the forum non conveniens inquiry simply asks whether the alternative forum is "adequate" and "available." Membreno, 425 F.3d at 937. As we have observed, availability and adequacy are separate issues. Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001). In order to be available, the foreign court must be able to "assert jurisdiction over the litigation sought to be transferred." Id. As for adequacy, we have observed that it is only in "rare circumstances" where "the remedy offered by the other forum is clearly

-12-

unsatisfactory," that the alternative forum may be regarded as inadequate. Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001) (quotation marks omitted). "The alternative forum prong of the analysis generally will be satisfied when the defendant is amenable to process in the other jurisdiction." Id. at 1282 (quotation marks omitted). Indeed, the Supreme Court has instructed us that a remedy is inadequate when it amounts to "no remedy at all." Id. at 1283 (quoting Piper Aircraft, 454 U.S. at 254).

The state court found that both of these requirements had been met. Specifically, the state court observed that "Guatemala possesses jurisdiction over the entire case, including all of the parties." State Court Order at 2. The state court also determined, based on consideration of expert testimony, that the appellants would not need to appear during the proceedings in Guatemala, and that, accordingly, litigating the case in Guatemala would pose no threat to the appellants' safety. Id. Finally, the state court rejected the appellants' claim that Guatemala was an inadequate forum because "lenient sentences" were given to certain of the individuals who were criminally prosecuted in connection with the underlying events giving rise to the case. Id. The district court, concluding that it was bound by these judgments, likewise determined that Guatemala qualified as an adequate alternative forum. Villeda Aldana v. Fresh Del Monte Produce, Inc., No.

-13-

01-3399-CIV, 2007 WL 3054986, at *3 (S.D. Fla. Oct. 16, 2007).

The appellants argue, nevertheless, that the district court abused its discretion by relying on the state court's determination that Guatemala was an adequate alternative forum, instead of conducting its own inquiry into the issue. The appellants contend that Guatemala is not an adequate forum for two reasons: first, because it is not safe for them; and second, because Guatemalan courts are beset by corruption and are ill-equipped to adjudicate a case, like this one, that implicates political conditions and officials. We are unpersuaded.

We do not take lightly the appellants' first contention -- that Guatemala is not safe for them. Nevertheless, even if the district court were not bound by the state court's opinion on this point, the argument still fails, because it is premised on the concern that the appellants might be required to return to Guatemala. As we have already noted, both the state court's and the district court's forum non conveniens dismissals contained an express proviso that the appellants' motions would be reconsidered if there is ever any indication that they might be required to return to Guatemala.

In addition to citing the possibility of danger, the appellants also argue that Guatemala is an inadequate forum because of alleged corruption affecting the nation's legal system. Specifically, they contend:

Plaintiffs presented the District Court with substantial evidence that Guatemala is ill-equipped to adjudicate a case challenging the use of clandestine security forces to torture trade unionists in a country where trade unionists are routinely murdered, and judges turn a blind eye to such violence. While mere corruption in a foreign judicial system may be insufficient to render a forum insufficient, if the level of impunity renders the remedy offered by the alternative forum "so clearly inadequate or unsatisfactory that it is no remedy at all," the forum cannot be considered an adequate, alternative forum.

Appellants' Br. at 31-32.

Again, this argument fails because the state court specifically found that Guatemala's courts were adequate. Under the doctrine of collateral estoppel, a court is precluded from relitigating an issue "when the identical issue has been litigated between the same parties and the particular matter was fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction." Paresky v. Miami-Dade County Bd. of County Comm'rs, 893 So.2d 664, 665-66 (Fla. Dist. Ct. App. 2005). In this case, the district court was thus bound by the state court's factual and legal conclusions on the issue of adequacy of forum. Since it was bound by the state court's conclusion, the district court did not err in failing to find that Guatemala's courts were inadequate due to corruption.[3]

_____

[3] The appellants also suggest that the district court abused its discretion by failing to consider "new and recent evidence" of violence against union leaders like the appellants. Specifically, they point to the alleged murder of Marco Ramirez, who, like the appellants, was a member of SITRABI. As evidence of the murder, the appellants state that they

submitted to the District Court a copy of a press release from The Center for Labor Solidarity in Guatemala, which stated that: "Ramirez's murder is the most recent in

-15-

In short, the district court did not abuse its discretion in determining that

Guatemala represented an adequate alternative forum.

## B.     Private Interest Factors

Appellants next challenge the district court's consideration of private interest

factors and its conclusion that the private interests weighed heavily in favor of

dismissal on <u>forum non conveniens</u> grounds.  In particular, the appellants argue

that the district court erred in considering only those factors considered by the state

a series of threats and attacks against SITRABI and its leaders". . . . The assassination of Ramirez came just three days after SITRABI learned that military officers had been disciplined by the Ministry of Defense in response to SITRABI complaints about the unlawful entry.

Appellants' Br. at 27 (citation omitted).  The press release was taken from the group's Internet website.

The parties dispute whether the press release was admissible evidence.  Appellees contend that the document is hearsay.  The appellants first argue, however, that the press release falls within the business records exception to the hearsay rule.  <u>See</u> Fed. R. Evid. 803(6).  In particular, they say that the press release should be viewed as a business record because "it was issued by the Solidarity Center in the ordinary course of its business as a well-respected, nongovernmental organization that frequently issues such releases."  Appellants' Reply Br. at 12.  However, the appellants cite no case, and we have been unable to find any, in which a press release from an Internet website qualified as a business record within the meaning of the exception.

The appellants also claim that appellees never moved to strike the document.  Appellees do not appear to dispute this contention, but it does not help the appellants for at least two reasons.  First, whether or not appellees objected to the document, the press release lacks the indicia of reliability that are typically required of evidence admitted under an exception to the hearsay rule.  Consequently, even if the document in some sense was part of the record, it is not clear why the district court would have abused its considerable discretion in declining to consider it.  And, in any event, as with the appellants' other attempts to challenge the adequacy of Guatemala as an alternative forum, any concern over the appellants' safety is effectively addressed by the fact that the appellants will not be required to return to Guatemala.

-16-

court and in giving insufficient weight to the appellants' choice of forum. We disagree.

In Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), the Supreme Court outlined the relevant public and private interest factors. In considering the private interests, the Court listed these:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained.

Id. at 508. We have continued to recite the same list of private interests ever since Gilbert. See, e.g., Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1356 (11th Cir. 2008) ("Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment."); Membreno, 425 F.3d at 937 (quoting Gilbert); SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004).

Following the state court, the district court addressed each of the Gilbert factors. Specifically, the district court considered the ease of access to sources of

proof, noting that the alleged misconduct occurred in Guatemala, and that the vast

majority of documentary evidence was located in Guatemala; the district court

discussed the cost of obtaining the attendance of witnesses, observing that all of

the witnesses except for the appellants were located in Guatemala, and that

significant expense would be incurred in transporting them to the United States;

the district court examined its ability to compel the attendance of unwilling

witnesses, explaining that all of the witnesses except for the appellants lived in

Guatemala, and therefore could not be compelled to attend the proceedings; and

the district court took account of additional practical and logistical difficulties --

for example, the need to translate documents written in Spanish, and the linguistic

barriers resulting from the fact that few of the witnesses were able to speak

English.  Aldana, 2007 WL 3054986, at *4.[4]

The district court also considered the plaintiffs' choice of forum.  In doing

---

[4] The dissent argues that the district court abused its discretion in part by misstating certain of the state court's factual findings.  In particular, the dissent observes that while the state court found that the "vast majority" of the evidence and witnesses were located in Guatemala, the district court stated that "the entirety of the witnesses except for the plaintiffs are located in Guatemala" and "the only evidence that is in the United States is the testimony of the Plaintiffs." Aldana, 2007 WL 3054986, at *4.  We do not regard this as a serious difficulty.  To the extent that the two characterizations diverge, we find the differences to be insignificant.  Even assuming that there were some witnesses in the United States in addition to the appellants, it would nevertheless remain true that the vast majority of the witnesses were located in Guatemala.  Similarly, even if there were some evidence in the United States beyond the appellants' testimony, it would nonetheless remain true that the vast majority of the evidence was to be found in Guatemala.  As a result, both considerations – the location of the evidence and the witnesses – would still point decisively in favor of litigating in Guatemala.

so, the district court correctly noted that its analysis of this factor was not dictated by the state court's analysis, because the relevant forum for purposes of the state forum non conveniens analysis is the state of Florida, whereas the relevant forum for purposes of the federal analysis is the United States as a whole. Id. On this factor, the district court recognized that the appellants were not residents of the chosen forum for purposes of the state analysis (none of them resided in Florida), but were residents of the chosen forum for purposes of the federal analysis (since all of them resided in the United States). The trial court observed that plaintiffs' choice of forum is entitled to substantial deference where the plaintiffs are residents of the chosen forum, and thus the district court determined that, in contrast to the state court's inquiry, the appellants' choice of forum was a significant factor weighing in the their favor. Despite the strong presumption in favor of the appellants' chosen forum, however, the district court reasoned that this single factor was outweighed by all of the countervailing private interests that favored a Guatemalan forum. Indeed, the district court concluded that the private interest factors so overwhelmingly favored Guatemala that it was unnecessary to consider the public interest factors at all. Id. at *5.

We find no clear abuse of discretion in the district court's forum non conveniens analysis. The district court correctly observed that it was bound by the

state court's analysis of each of the individual private interest factors, but not by the state court's analysis of the plaintiff's choice of forum. Moreover, the district court clearly recognized that, since the appellants lived in their chosen forum for the purposes of the federal analysis, this factor weighed heavily in their favor. The district court squarely took account of our requirement that there be "positive evidence of unusually extreme circumstances," and that the court be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." Aldana, 2007 WL 3054986, at *3 (citing SME Racks, 382 F.3d at 1101-02).

At the same time, the district court also correctly pointed out that the plaintiffs' forum choice alone is not dispositive. Rather, as the Supreme Court has explained, its forum non conveniens cases "have repeatedly emphasized the need to retain flexibility" and have underscored that "each case turns on its facts." Piper Aircraft Co., 454 U.S. at 249 (quotation marks omitted). The Court has further explained that if "central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." Id. at 249-50. Thus, while the plaintiffs' choice of forum has traditionally been regarded as particularly important, it is ultimately only a proxy for determining the convenience of litigating in one forum instead of another, and

that, at bottom, "the central focus of the forum non conveniens inquiry is convenience." Id.

Here, the district court found that the plaintiffs' choice of forum was the only private interest factor weighing in the appellants' favor, whereas each of the other private interest factors -- i.e., the relative ease of access to sources of proof, which in this case were located predominately in Guatemala; the cost of obtaining attendance of willing witnesses, who in this case were also almost entirely in Guatemala; the ability to compel the unwilling witnesses, which in this case was lacking for the witnesses who lived in Guatemala; and additional practical and logistical issues, which in this case included the need to translate documents, and other linguistic barriers -- favored a forum non conveniens dismissal. The trial court concluded that the lineup of private interest factors found in this case constituted "'positive evidence of unusually extreme circumstances,'" Aldana, 2007 WL 3054986, at *5 (quoting SME Racks, 382 F.3d at 1102), sufficient to override the real presumption in favor of the plaintiffs' forum choice, and that on the whole, the balance of private interest factors strongly favored Guatemala as the forum for this case. It was only after precise and careful analysis that the district court came to this conclusion. We thus see no basis for the appellants' claim that the district court "disregarded completely Plaintiffs' choice of forum," Appellants'

Br. at 34, nor any ground for concluding that this aspect of the court's analysis amounted to a clear abuse of discretion.

The dissent argues that the district court abused its discretion in concluding that it was collaterally estopped from considering private interests beyond those considered by the state court, and, therefore, by failing to consider additional private interests – specifically, the appellants' interest in appearing in person at trial, and the prejudice appellants were likely to suffer as a result of the delay in having to begin litigation anew in Guatemala. We disagree.[5]

As an initial matter, we do not share the dissent's assumption that the district court indeed regarded itself as precluded by the doctrine of collateral estoppel from considering private interests beyond those considered by the state court. In its order, the court merely says that "[b]ecause the private interest factors involved in forum non conveniens cases are identical in Florida and federal law, this Court is precluded from considering a different list of private interests." Aldana, 2007 WL 3054986, at *4. Nowhere in its discussion of this issue does the district court mention the principle of collateral estoppel or make any mention of the state court's opinion. In our view, the district court could just as well be understood as

---

[5] And, to the extent the dissent references, in passing, a third conceivable interest -- the relative ease of enforcing a judgment -- as best we can tell, this interest was not argued at the district court level, and was not raised at all by the appellants in their blue brief.

saying something quite different – for example, that since the federal and state forum non conveniens doctrines are the same, the district court was required to apply the factors listed in Gilbert, despite the fact that the state court followed Florida law. To be sure, the meaning of the district court's order on this point is not self-evident. But we see no reason to accept the dissent's interpretation, particularly when that interpretation gives rise to complexities that alternative interpretations do not.

In any event, regardless of whether the district court was bound (or thought it was bound) by collateral estoppel to consider only those factors addressed by the state court, we cannot agree that the district court abused its discretion in failing to consider these additional factors. For one thing, as we have noted, the district court's analysis took account of each of the paradigmatic private interest factors enumerated in our case law. Again, since the Supreme Court's decision in Gilbert, we have continued to enumerate the private interest factors as including "[the] relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment." Renta, 530 F.3d at 1356. Where, as here, the district court has adequately considered each of these factors, we are loath to find a clear abuse of discretion.

We further point out that, under these circumstances, obliging a district court to consider factors not considered by a state court would give rise to a number of substantial difficulties. For example, given the potentially limitless number of private interests, it is virtually always possible for a reviewing court to identify additional interests that a district court might have considered. District court <u>forum non conveniens</u> rulings would possess very little finality if they could be overturned on appeal by second-guessing the district court's decision to limit itself to a particular set of interests, especially where those interests mirror precisely the factors that the Supreme Court has explicitly enumerated.

In a similar way, in virtually any case, a district court could very likely identify any number of private interests beyond those considered in an otherwise preclusive state court <u>forum non conveniens</u> determination. Once a district court begins to examine private interests beyond those considered by a state court – particularly where the state court has considered each of the factors listed by the Supreme Court in <u>Gilbert</u> – there would appear to be no easy way of cabining the number of such interests the district court might take into account. By invoking a sufficient number of additional interests, a district court might easily end up conducting an inquiry entirely different from the one performed by the state court and arriving at a balance contrary to the one reached by the state court. In essence,

this would allow a federal court regularly to nullify or circumvent an otherwise preclusive state court forum non conveniens judgment.

Finally, and most importantly, we are not convinced that consideration of the additional factors suggested by the dissent would indeed alter the balance of private interest factors in any meaningful way. For one thing, appellants' claimed interest in being present at trial and in testifying in person does not seem to weigh very heavily in the appellants' favor here, because the interest in being present and testifying at trial is shared by both appellants and appellees. While the appellants are not likely to testify in person if the case is tried in Guatemala (due to safety concerns), many defense witnesses would not testify in person if the case were tried in the United States (because they are not subject to the court's compulsory process). In other words, the interest in being present at trial in this case may be a wash.

Nor are we convinced that the overall balance of private interests would be significantly affected by the second private interest cited by the dissent -- that of avoiding the prejudice caused by the delay of having litigation over again if the case were dismissed.[6] At the outset, it is unclear that avoiding delay ought to be

---

[6] As an initial matter, the appellants' have likely waived the issue by not properly raising it below. The appellants have raised the issue of delay before the magistrate judge -- but only during oral argument and only in the most glancing terms. Notably, in responding to the appellees' waiver argument, the appellants cite to a mere twenty lines from the transcript of the

(continued...)

-25-

considered a "private interest" at all, as opposed to a consideration relevant to the "adequate alternative forum" step of the <u>forum non conveniens</u> inquiry.[7] Indeed, in many cases, federal courts have considered the issue of delay as falling under the latter rubric.[8] Even if the issue of delay should be taken into account -- and taken

---

[6](...continued)
hearing before the magistrate judge.  See, e.g., <u>Stewart v. Dep't of Health and Human Servs.</u>, 26 F.3d 115, 115 (11th Cir. 1994) ("As a general principle, this court will not address an argument that has not been raised in the district court."); <u>cf.</u> <u>Alfadda v. Fenn</u>, 159 F.3d 41, 48 (2d Cir. 1998) (plaintiffs failed to argue with sufficient particularity that the amount of discovery conducted to date weighed against <u>forum non conveniens</u> dismissal and therefore waived the issue).

[7] For example, some courts have taken account of the delay that can be expected once a plaintiff's suit is instituted in an alternative forum in assessing the adequacy of the foreign forum. See, e.g., <u>Bhatnagar v. Surrendra Overseas Ltd.</u>, 52 F.3d 1220, 1227 (3d Cir. 1995) (treating delay due to litigation backlog as a factor relevant to whether an alternative forum was adequate); <u>In re Bridgestone/Firestone, Inc.</u>, 190 F. Supp. 2d 1125, 1153 (S.D. Ind. 2002) ("[D]elay in the foreign court usually is considered to the extent that it may render the alternative forum inadequate."); <u>Broad. Rights Intern. Corp. v. Societe du Tour de France, S.A.R.L.</u>, 708 F. Supp. 83, 85 (S.D.N.Y. 1989) (treating delays in an alternative forum's judicial system under the adequacy prong).

Similarly, courts have considered the amount of discovery already completed in the litigation, and the delay resulting from having to begin again, in assessing an alternative forum's adequacy.  See, e.g., <u>Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.</u>, 955 F.2d 368, 372-73 (5th Cir. 1992).  And several have noted confusion over just how the issues of delay and prejudice fit into the overall <u>forum non conveniens</u> inquiry.  <u>Alfadda</u>, 159 F.3d at 48 ("There appears to be some disagreement, largely of academic interest, as to whether the extent of completed discovery should be considered a public or a private interest under the <u>Gilbert</u> analysis."); <u>see also</u> <u>Lony v. E.I. Du Pont de Nemours & Co.</u>, 935 F.2d 604, 613 (3d Cir. 1991).

[8] The issue is relevant here because, if the interest in avoiding delay is properly analyzed in connection with the "adequate alternative forum" prong of the <u>forum non conveniens</u> inquiry, the district court would not have erred in failing to consider it along with the private interest factors.  Nor, however, would the district court have committed a clear abuse of discretion in failing to consider the delay factor in connection with the adequate alternative forum inquiry.  As we have noted, it is only in "rare circumstances" where "the remedy offered by the other forum

(continued...)

-26-

into account as a private interest -- there is still little reason to think that the balance of the private interests would be meaningfully altered as a result.  The appellants point out that the case has been pending for some six years.  But, "there is generally no time limit on when a motion to dismiss for <u>forum non conveniens</u> must be made, which differentiates it from the time limits on a motion to dismiss for improper venue."  Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 14D Fed. Prac. & Proc. Juris. 3d § 3828 (3d ed. 2008).  And indeed, courts have upheld the <u>forum non conveniens</u> dismissal of cases pending for as long as, if not longer than, the instant case.  <u>See, e.g.</u>, <u>Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.</u>, 955 F.2d 368, 373 (5th Cir. 1992) (case's stage of development did not weigh against dismissal even though underlying suit was filed eight years before and even though "much work ha[d] been done on th[e] case").

The appellants also claim that the district court's dismissal was an abuse of

---

[8](...continued)
is clearly unsatisfactory," that the alternative forum may be regarded as inadequate.   <u>Satz</u>, 244 F.3d at 1283.  "The alternative forum prong of the analysis generally will be satisfied when the defendant is amenable to process in the other jurisdiction."  <u>Id.</u> at 1282 (quotation marks omitted).  Again, the Supreme Court has noted that a remedy is inadequate when it amounts to "no remedy at all."  <u>Id.</u> (quoting <u>Piper Aircraft</u>, 454 U.S. at 254).  Here, even assuming that the appellants would suffer some prejudice by having to begin the litigation anew in Guatemala, the prejudice would not amount to leaving the appellants with no remedy at all.  Since Guatemala would qualify as an adequate alternative forum in any event, the district court's failure explicitly to consider the appellants' interest in averting delay would hardly have affected the outcome.

discretion given the amount of discovery conducted so far in the case. In point of fact, however, discovery in this case has been relatively limited, focused largely on jurisdictional questions rather than on the merits. According to the appellants, when the district court granted the forum non conveniens motion, the parties "had exchanged written discovery responses and documents, and were in the midst of supplementing such responses and preparing for depositions." Appellants' Reply Br. at 23. This Court, and others, have upheld forum non conveniens dismissals in cases where more discovery had been conducted. In Sigalas v. Lido Mar., Inc., 776 F.2d 1512 (11th Cir. 1985), for example, we upheld the district court's forum non conveniens dismissal at the pretrial conference stage, "after lengthy discovery when [the case] was ready to be tried on the merits." Id. at 1520; see also Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 614 (3d Cir. 1991) ("[W]e hold today that whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal on the grounds of forum non conveniens greatly increases."); Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir. 1984) ("That trial preparation had progressed nearly to the point of trial certainly was a relevant factor when the district court considered whether trial of the case in Arizona would have been more easy, expeditious and inexpensive

than trial in the Philippines.") (quotation marks omitted, emphasis added); cf.

Mercier v. Sheraton Int'l, Inc. 981 F.2d 1345, 1357 (1st Cir. 1992) (merits activity

"never approached the level which was held to preclude dismissal in Lony or to

weigh against dismissal Gates").[9]

In short, none of the concerns raised by the dissent persuades us that the

district court was obliged to consider private interest factors beyond the ones that it

covered in its analysis. Again, this is not to say that the district court's conclusion

was the only reasonable one, or that another court could not reasonably have come

---

[9] The appellants cite only two cases in support of their suggestion that it would be an abuse of discretion to grant a motion to dismiss at this stage on forum non conveniens grounds. The first is La Seguridad v. Transytur Line, 707 F.2d 1304, 1310 (11th Cir. 1983). By the appellants' own reckoning, however, that case stands only for the proposition that a "court must consider the prejudice and inconvenience to the plaintiff in having his or her case relegated to a foreign forum." Appellants' Br. at 41 (emphasis added). The question here is not whether the court considered the inconvenience to the appellants of having the case moved to Guatemala; it is whether the court should have considered the inconvenience resulting from the transfer after six years of litigation in American courts. Hence, La Seguridad is inapposite.

The appellants' second case is Genpharm Inc. v. Pliva-Lachema, 361 F. Supp. 2d 49 (E.D.N.Y. 2005), which has no precedential value for this Court, and, in any event, is also wide of the mark. Genpharm merely observed that the court could take account of "the fact that the Defendants have moved for dismissal based on forum non conveniens more than a year after the case was filed." Id. at 60. The decision does not suggest that such a delay, standing alone, would be enough to warrant denying the defendants' forum non conveniens motion. Moreover, the facts in this case are very different from those in Genpharm: here, the appellants do not contend that appellees' first forum non conveniens motion was tardy. The fact that appellees renewed their motion at a later stage in the case's development was because it was not until that time that the state court issued its forum non conveniens dismissal. If the state court had granted the motion earlier, appellees would in all likelihood have renewed its motion earlier. In any event, given the state court's decision, it was perfectly reasonable for appellees to renew their forum non conveniens motion in the federal action.

to a different conclusion, or even that if we were writing on a clean slate we wouldn't have reached the opposite conclusion. We say, however, only that the district court could reasonably find that, with the exception of the plaintiffs' choice of forum, all of the private interest factors weighed in favor of dismissal, and that, even while assigning substantial weight to the plaintiffs' choice of forum, the overall balance tilted decidedly on the side of Guatemala.

## C. Public Interest Factors

Next, the appellants claim that the district court erred in its balancing of the public interest factors by failing to assign sufficient weight to the United States' interest in adjudicating claims under the ATA and the TVPA. As we have indicated, however, it is only when the private interest factors are "at or near equipoise" that a district court is obliged to consider the public interests at stake in a suit. Del Campo Bacardi, 845 So. 2d at 36 n.1; see also Membreno, 425 F.3d at 937. Thus, since the district court here did not err in concluding that the private interest factors overwhelmingly favored dismissal, it was not necessary, as the district court itself observed, to analyze the public interest factors.

Nevertheless, the district court did address the public interest factors, and for completeness, we note that, even if addressing the factors had been necessary (and on this record, we do not think so), the district court's analysis of these factors did

not amount to a clear abuse of discretion.

In examining the public interest factors, the district court first observed that it was not bound by the state court's discussion of the public interest factors because that part of the opinion was not essential to the state court's ultimate ruling. However, the district court approvingly cited the state court's discussion of the public interest factors. In particular, like the state court, the district court found that the dispute was "quintessentially Guatemalan," since it involved "one of Guatemala's largest private employers in one of Guatemala's most important economic sectors" and "one of Guatemala's most influential labor unions." Aldana, 2007 WL 3054986, at *5. In addition, the court observed that the appellants' "choice of a Florida forum imposes an inappropriately heavy burden on this Court and this community," while "Guatemala, on the other hand, has a paramount interest in this dispute and its courts are more appropriate for adjudicating Plaintiffs' claims." Id.

Furthermore, the district court concluded that while "there is a strong public interest in favoring the receptivity of United States courts to [torture] claims under 28 U.S.C § 1350, there is a greater policy interest in preventing forum shopping, as well as in protecting comity between the United States and other nations and other such interests." Id. Thus, the district court held that, like the private interests, the

-31-

public interests also weighed heavily in favor of dismissal, and that, as a result, even if the private interest factors had not decisively favored Guatemala, dismissal of the suit on <u>forum non conveniens</u> grounds still would have been appropriate.  <u>Id.</u>

Far from disregarding the importance of adjudicating claims under the ATA and TVPA, the district court explicitly acknowledged the "strong public interest in favoring the receptivity of United States courts to [such] claims." <u>Id.</u>  The district court concluded, however, that "there is a greater policy interest in preventing forum shopping, as well as in protecting comity between the United States and other nations and other such interests." <u>Id.</u>  The district court's concern here is not unreasonable: it is not hard to imagine that Guatemala might regard trying this case in an American court as a tacit acceptance of the appellants' assertion that the Guatemalan judicial system is too corrupt to justly resolve the dispute.

Indeed, the appellants essentially make just this argument.  They fault the district court for ignoring evidence that "Guatemala has little interest in bringing Plaintiffs' violators to justice or prosecuting trade union violence cases," and they point out that "the U.S. State Department has for years reported the notorious level of violence against Guatemalan trade unionists, and the level of impunity which prevents the Courts from bringing the perpetrators of trade union violence to justice." Appellants' Br. at 40.  But this suggestion is at war with the undisputed

finding that Guatemalan courts constitute an adequate alternative forum. State Ct.

Op. at 2; Aldana, 2007 WL 3054986, at *3. The district court could reasonably

have decided to avoid the risk of conveying any such suggestion.

The district court identified key public interests such as maintaining comity

with other nations, and the foreign sovereign's undeniable interest in adjudicating

this dispute, involving one of Guatemala's largest private employers in a very

important economic sector, and one of the sovereign's most influential labor

unions. Moreover, the district court weighed these various factors in a reasonable

fashion and determined that Guatemala's interest was stronger than the United

States'. Under an abuse of discretion standard, "the district court had a range of

choice and . . . we cannot reverse just because we might have come to a different

conclusion had it been our call to make." Sloss Indus. Corp. v. Eurisol, 488 F.3d

922, 934 (11th Cir. 2007) (quotation marks omitted).[10] Since the underlying events

---

[10] In arguing that the United States has a superior interest in adjudicating the dispute, the appellants cite Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000). There, the Second Circuit indicated that the TVPA "in addition to merely permitting U.S. District Courts to entertain suits alleging violation of the law of nations, expresses a policy favoring receptivity by our courts to such suits." Id. at 105. Wiwa also states the TVPA "expresses a policy favoring our courts' exercise of the jurisdiction conferred by the ATCA in cases of torture unless the defendant has fully met the burden of showing that the . . . factors tilt strongly in favor of trial in the foreign forum." Id. at 100 (quotation marks and brackets omitted). But, at the same time, the court itself rejected the view that "the TVPA has nullified, or even significantly diminished, the doctrine of forum non conveniens," and explained that the statute simply "communicated a policy that such suits should not be facilely dismissed on the assumption that the ostensibly foreign controversy is not our business." Id. at 106.

took place in Guatemala, all of the individuals involved were (at least at the time) Guatemalan citizens, and Guatemalan political and economic tensions form the essential backdrop to the entire dispute, we are hard-pressed to say that the district court abused its discretion in reaching this conclusion, even if it had been required to address the public interest factors at all.

In short, we discern no abuse of discretion in any aspect of the district court's <u>forum non conveniens</u> analysis, and, accordingly, affirm.

**AFFIRMED.**

KRAVITCH, Circuit Judge, dissenting:

I believe the district court erred in finding that the state court's consideration of the private interest factors had a preclusive effect in this case. Furthermore, I believe the district court abused its considerable discretion in its weighing of the private and public interest factors at issue in this case. For these reasons, I would vacate the district court's order and remand this matter for reconsideration. Accordingly, I respectfully dissent.

## A.    Collateral Estoppel

"[A] federal court must give the same full faith and credit to the records and judicial proceedings of any state court that they would receive in the state from which they arise." Gjellum v. City of Birmingham, 829 F.2d 1056, 1060 (11th Cir. 1987) (citing 28 U.S.C. § 1738). This is the rule regardless of whether the state court's judgments are erroneous. Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996); Lops v. Lops, 140 F.3d 927, 938 (11th Cir. 1998). The preclusive effect of state judgments in federal court is determined, in the first instance, according to principles of state law. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("This statute [28 U.S.C. § 1738] directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). In Florida, "collateral estoppel applies when the identical parties

wish to relitigate issues that were actually litigated as necessary and material issues in a prior action." Carson v. Gibson, 638 So. 2d 79, 81 (Fla. Dist. Ct. App. 1994) (citing Albrecht v. State, 444 So. 2d 8 (Fla. 1984)).

In this case, the district court did not adopt the state court's decision *in toto*, but found that only certain of the state court's findings gave rise to collateral estoppel. The court correctly recognized that the *forum non conveniens* analysis differs between state and federal courts, see Esfeld v. Costa Crociere, 289 F.3d 1300,1303 (11th Cir. 2002) (deciding that federal and Florida *forum non conveniens* analyses are not identical for *Erie* purposes), and only adopted those factual findings of the state court which it deemed to be identical to the factual inquiries required of it. See Cook v. State, 921 So. 2d 631, 634 (Fla. Dist. Ct. App. 2005) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.") (quoting Restatement (Second) of Judgments § 27 (1982)). Specifically, the district court found that it was bound (1) by the state court's determination that Guatemala provides an adequate and available alternative forum for Plaintiffs to bring suit and (2) by the state court's finding that the only relevant private interest factors implicated in the case are that the alleged

misconduct occurred in Guatemala, the vast majority of witnesses and evidence is located in Guatemala, and the vast majority of documentary evidence and potential live testimony would require translation from Spanish for admission in Florida state court. This court must consider de novo whether the district court erred in finding that it was bound by the state court's resolution of these issues.

I agree with the majority that federal and Florida state law require an identical analysis for determining the availability and adequacy of a foreign forum. Thus, because in deciding the issue the district court would have been required to consider and decide questions of fact already decided by the state court, I agree that the district court did not err in finding that it was bound by the state court's conclusion that Guatemala is an adequate alternative forum.

I disagree, however, with the majority's conclusion that the district court "was bound by the state court's analysis of each of the individual private interest factors." The district court found that "the private interest factors involved in *forum non conveniens* cases are identical in Florida and federal law" and concluded that it was therefore "precluded from considering a different list of private interests." Aldana v. Fresh Del Monte Produce, Inc., 2007 WL 3054986, * 4 (S.D. Fla. Oct. 16, 2007). This court has held, however, that the private interests involved in trying a case in state or federal court are not identical. See Esfeld, 289

F.3d at 1303 (noting that in the *forum non conveniens* context, federal courts, unlike state courts, do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole). The district court itself recognized this fact. Immediately after finding that the private interest factors involved were identical, the district court noted that "the <u>only</u> different private interest is that in Florida state court, the Plaintiffs were not residents of Florida and thus were not afforded a special presumption of correctness [whereas] in this Court as residents of the United States they are afforded such a presumption." <u>Aldana</u>, 2007 WL 3054986 at * 4 (emphasis in original). "The well established rule in Florida has been and continues to be that collateral estoppel may be asserted only when the <u>identical issue</u> has been litigated between the same parties . . . ." <u>R.D.J. Enterprises, Inc. v. Mega Bank</u>, 600 So. 2d 1229, 1231 (Fla. Dist. Ct. App. 1992) (emphasis added). Where the inquiries are anything less than identical, collateral estoppel does not apply. <u>See</u> <u>id.</u> Accordingly, because the pragmatic concerns a party faces by being called into federal court are <u>not</u> identical to the concerns implicated by being called into state court, the district court was not required to adopt the state court's conclusion that "[t]he private interest factors weigh heavily in favor of the Guatemalan forum." <u>Aldana v. Fresh Del Monte Produce, Inc.</u>, No. 04-00723-CA-20, slip op. at 4 (Fla.

Cir. Ct. March 30, 2005). Furthermore, collateral estoppel did not prevent the district court from considering "a different list" of private interests not explicitly considered by the state court. Rather, the district court was free to consider, without limitation, any number of pragmatic concerns which would make trial of this case in either forum "easy, expeditious and inexpensive" and to give whatever weight to these concerns that it deemed appropriate. Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947).

To the extent the state court made specific factual findings regarding certain private interest factors which were also relevant to the district court's inquiry, however, the district court properly did not revisit these factual determinations. Specifically, the district court was bound by the state court's limited factual findings that "the alleged misconduct of which the Plaintiffs complain occurred in Guatemala, the vast majority of the witnesses and documentary evidence [is] located in Guatemala or in countries close to Guatemala, the vast majority of the documentary evidence is in Spanish . . . , and the witnesses either do not speak English or Spanish is their native language."[1] Aldana, No. 04-00723-CA-20, slip op. at 4. These factual issues were fully litigated and resolved by the state court

---

[1] This sentence represents the entirety of the state court's factual findings regarding the parties' private interests in this case. As discussed infra, however, the district court described these findings differently in its order.

and these facts are relevant to both the state and federal court's *forum non conveniens* analysis. Issue preclusion, therefore, required the district court to adopt the state court's resolution of these specific questions of fact. The weighing of these facts, however, remained within the exclusive power of the district court, as did the consideration of any additional private interests upon which the state court did not make explicit findings. For example, the state court did not address the Plaintiffs' strong interest in being present at their trial.[2] Also, the state court made no factual findings regarding any prejudice to Plaintiffs resulting from the dismissal of their lawsuit at this late date, In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008) (noting that the possibility of delay and prejudice is a private interest factor in the *forum non conveniens* analysis), or regarding the relative ease of enforcing a judgment in either forum.[3] See Ford v. Brown, 319 F.3d 1302, 1307 (11th Cir. 2003) ("There may also be questions as to the

---

[2] Plaintiffs' interest in being present for trial is a private interest weighing in favor of Plaintiffs' choice of forum which should be considered separate and apart from the issue of whether Guatemala provides an adequate forum. See Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1134, 1150 (C.D. Cal. 2005) (holding that because "Plaintiffs would be able to file their case in Colombia, . . . Plaintiffs' concerns as to their safety are more appropriately considered in the private interest factors analysis."); Sarei v. Rio Tinto PLC, 221 F. Supp. 2d 1116, 1208 (C.D. Cal. 2002) (stating that "plaintiffs' fears, while an appropriate consideration in assessing whether private interest factors favor a *forum non conveniens* dismissal, do not render [Papua New Guinea] an inadequate forum"); see also In re Bridgestone/Firestone, Inc., 190 F. Supp. 2d 1125, 1144 (S.D. Ind. 2002) (considering the "political instability and violence in Colombia" in its private interest factors analysis).

[3] Relevant to this determination is the fact that the main corporate defendant, Del Monte, is incorporated and located in the United States.

enforceability of a judgment if one is obtained."). In addition to this non-exhaustive list, the district court was free to consider any number of other practical problems that make trial of a case in a particular forum an undue burden upon either party.[4] Id. Accordingly, I conclude that the district court erred in its application of collateral estoppel and that this error caused it to believe it could not consider and weigh private interests which were properly before it.

## B. Forum Non Conveniens: Weighing of the Factors

As described more fully below, in addition to erroneously concluding that its analysis must be limited to those private interest factors addressed by the state court, I believe the district court also misinterpreted the facts actually found by the state court. These errors caused the district court to strike a balance of the parties' private interests that was an abuse of discretion. I also believe the district court committed errors constituting an abuse of discretion in weighing the relevant

---

[4] The majority asserts that because the district court, in limiting its analysis to those factors considered by the state court, still addressed the majority of the Gilbert factors, it performed a proper analysis of the private interests. The majority argues that the dissent "second-guess[es] the district court's decision to limit itself to a particular set of interests." This, however, is not my intent. If the district court, after properly interpreting the law of collateral estoppel, had actually decided to limit its analysis to the list of private interest factors set forth by the state court, I would agree with the majority that its analysis is entitled to substantial deference. Here, however, the district court did not decide to only consider the private interests cited by the state court; rather, it misapplied the law of collateral estoppel and this error caused it to conclude that it could only consider these interests. This error of law influenced the district court's balancing of the relevant factors and constitutes an abuse of discretion. See Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990) (noting that a district court by definition abuses its discretion when it makes an error of law).

public interest factors.  I conclude, therefore, that the district court's balancing of the parties' relevant public and private interests is invalid.  See Ford, 319 F.3d at 1308 (holding that the district court "overlooked some highly relevant factors, and that it ultimately struck a balance that was an abuse of discretion").

### 1.     *Private Interest Factors*

With regard to the weighing of the private interests, the Supreme Court has held that the plaintiffs' choice of forum should rarely be disturbed "unless the balance is strongly in favor of the defendant."  Gilbert, 330 U.S. at 508.  This presumption in favor of the plaintiffs' initial forum choice is at its strongest when the plaintiffs are citizens, residents, or corporations of this country.  Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001) ("[B]alancing private interests requires determining the convenience of the parties, affording domestic plaintiffs 'a strong presumption' that their forum choice is sufficiently convenient, and a weaker presumption applying in cases brought by foreign plaintiffs.").  Although the Supreme Court has been clear that "dismissal should not be automatically barred when a [domestic] plaintiff has filed suit in his home forum," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23 (1981), in this circuit, we have long mandated that district courts "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is

manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)).

Here, the district court noted that because Plaintiffs are lawful residents of the United States, it must give Plaintiffs' choice of forum "a special presumption of correctness;" however, the court then dismissed the presumption as "not singularly dispositive" after finding that it was bound by the state court's finding that "[t]he only evidence that is in the United States is the testimony of the Plaintiffs." Aldana, 2007 WL 3054986 at *4. This analysis is flawed for two reasons. First, the district court's finding that Plaintiffs' location in the United States is the sole factor weighing in favor of Plaintiffs' choice of forum is a misstatement of the state court's factual findings. Although the district court purported to adopt the state court's factual findings regarding the parties' private interests, it stated these facts slightly differently in its order. Rather than finding, as the state court did, that the "vast majority" of the evidence and witnesses are located in Guatemala, the district court found that "the entirety of the witnesses except for the Plaintiffs are located in Guatemala" and that "the only evidence that is in the United States is the testimony of the Plaintiffs." Id. (emphasis added). This is not what the state court

-43-

found, nor is it a proper characterization of the record before the court. Without disputing the state court's characterization that the "vast majority" of the evidence is in Guatemala, I note that the record indicates that there is indeed some other documentary evidence and witness testimony in the United States, namely, the evidence located in the Del Monte corporate offices in Florida needed to prove the Del Monte defendant's control over its alleged agents in Guatemala. Accordingly, the district court misconstrued the facts to which it was bound and misinterpreted the evidence in the record when it found that "[a]ll the other evidence is in Guatemala or in the surrounding areas" and that "[n]one of the witnesses involved in the case, except Plaintiffs, are within the reach of this Court's compulsory process." Although the majority believes this difference is "insignificant," I am not so convinced. The difference between "none" and "some" could very well be determinative in a balancing test, particularly when weighed with the strong presumption in favor of the Plaintiffs' choice of forum.

Second, in any event, the district court was not limited by the state court's private interests analysis. As discussed above, the court could have weighed other interests, including but not limited to Plaintiffs' interest in being present for their trial, Plaintiffs' interest in avoiding delay, and the relative ease of enforcing a judgment in either forum. Gilbert, 330 U.S. at 508 (noting that a court will

consider all practical problems in order to "weigh relative advantages and obstacles to fair trial"). Also, to the extent the district court was bound by the state court's factual findings, it was not required to give the same heavy weight to these individual private interests as was given by the state court. For example, even though it could not relitigate the state court's finding that the vast majority of evidence and testimony would be in Spanish, the district court was free to reach its own conclusion regarding the inconvenience this fact would pose on a defendant litigating in a United States federal court, as opposed to in the state court. Federal district courts, particularly those in the Southern District of Florida, are "well-equipped and experienced" in trying cases "in which many of the witnesses might speak a language other than English and in which many of the documents may be in a language other than English." Licea v. Curacao Drydock Co., Inc., 537 F. Supp. 2d 1270, 1276 (S.D. Fla. 2008). Accordingly, although the state court found that the necessity of translating evidence and witness testimony would be particularly burdensome for a defendant in state court, the district court may have found that, considering the resources available to federal courts, this necessity imposed a "relatively light burden on [a d]efendant litigating in the U.S." Id.

If the district court had recognized that other evidence and witnesses were located in the United States, that the interests discussed by the state court could be

reweighed, and that additional private interest factors could be considered, its analysis of the parties' private interests, considered in conjunction with the strong presumption this court affords to a United States resident's choice of forum, would necessarily have differed. For this reason, I conclude that the district court's finding that "the weight of private interests lies heavily in favor of the Defendants' choice of Guatemala as a forum" is tainted by its misinterpretation of the state court's factual findings and by its erroneous conclusions of law and therefore constitutes an abuse of discretion.

2. *Public Interest Factors*

After noting that consideration of the public interest factors was not necessary for its decision,[5] the district court nonetheless weighed these factors and found that "[i]t is difficult to identify any public interest factor which would weigh in favor of the Plaintiffs." Aldana, 2007 WL 3054986 at *5. I disagree.

Relevant public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary

---

[5] See SME Racks, Inc., 382 F.3d at 1101 (noting that if the balance of private interest factors is at or near equipoise, the court must then consider relevant factors of public interest); but see Leon, 251 F.3d at 1311 ("[T]he better rule is to consider both factors in all cases.").

problems in conflicts of law or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. SME Racks, Inc., 382 F.3d at 1100-01. In considering the public interest factors at issue in this case, the district court did not address the factors listed above; rather, after noting that "there is a strong public interest in favoring the receptivity of United States courts to claims under 28 U.S.C. § 1350," it found that "there is a greater policy interest in preventing forum shopping, as well as in protecting comity between the United States and other nations and other such interests." Aldana, 2007 WL 3054986 at *5. The district court, however, did not explain how Plaintiffs' choice of forum – in a federal court of their country of residence – constitutes forum shopping or threatens international comity. Indeed, it is perfectly reasonable for Plaintiffs to have brought this lawsuit in the court of the country of their residence, particularly because United States' law governs their claims and one of the Defendants, Del Monte, is incorporated and located in the United States. Also, because there is no pending suit or prior judgment in Guatemalan court, it is not obvious why there should be any threat to international comity in allowing Plaintiffs to file their civil suit in this country. See Ford, 319 F.3d at 1309 (holding that comity concerns are implicated where plaintiffs' ask the district court to contradict the conclusions of the Hong Kong courts and to "overlook the respect

that a foreign sovereign is due").

Furthermore, the district court gave an unreasonably short shrift to the United States' strong interest in hearing claims alleging state-sponsored torture brought under the ATA and the TVPA. In enacting the ATA and the TVPA, Congress expressed "a policy favoring receptivity by our courts" to suits alleging violations of the law of nations unless the defendant has fully met the burden of showing that the *forum non conveniens* factors "tilt[ ] strongly in favor of trial in the foreign forum." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 106 (2d Cir. 2000) (emphasis added). I conclude that the district court's vague and unexplained concerns regarding forum shopping and comity are insufficient to outweigh the United States' hefty interest in upholding the standards of international law through the TVPA. See id. (finding that the TVPA conveys the message that "torture committed under color of law of a foreign nation in violation of international law is 'our business' . . .").

The district court also erred when it cited with approval the state court's conclusion that Plaintiffs' claims constitute a "quintessentially Guatemalan dispute" and that therefore "Plaintiffs' choice of a Florida forum imposes an inappropriately heavy burden on this Court and this community." The state court's analysis of the public interest factors implicated in the case before it is entirely

inapposite here.  In the action before the state court, unlike this case, the court was faced with a plethora of tort claims which were governed by Guatemalan law, a fact acknowledged and considered by the state court.  Aldana, No. 04-00723-CA-20, slip op. at 5 ("Furthermore, the fact that Guatemalan law will govern this dispute adds to balance weighing in favor of the Guatemalan forum.").  "Even the possibility that foreign law applies in a dispute is sufficient to warrant dismissal on *forum non conveniens* grounds."  Warter v. Boston Securities, S.A., 380 F. Supp. 2d 1299, 1315 (S.D. Fla. 2004); see also Gilbert, 330 U.S. at 509.  In contrast, the federal claims at issue here require the court to apply United States statutory law and implicate treaty law and the law of nations.  The United States has a strong interest in its courts deciding these federal claims and there would be no difficulty regarding conflicts of law or in the application of foreign law.  Accordingly, the district court erred in finding that the "state court's determinations regarding public interest factors . . . are persuasive" in this case.  As a result of the errors cited above, I believe that the district court ultimately struck a balancing of the public interest factors that was an abuse of discretion.

## C.    Conclusion

Although a district court's decision regarding *forum non conveniens* generally "deserves substantial deference," it is only entitled to this deference

"[w]here the court has considered <u>all</u> relevant public and private interest factors, and where its balancing of these factors is reasonable." <u>See</u> <u>Piper Aircraft Co.</u>, 454 U.S. at 257 (emphasis added). Reviewing the district court's analysis of the public and private factors, I believe that it erred by not considering all of the public and private interests and by not applying the presumptions required by law. Indeed, because it wrongly believed it was limited to considering only those private interests considered by the state court and because it misinterpreted the state court's factual findings, the district court only considered the relative advantages of the Guatemalan forum and did not consider any of the private interest factors which may have weighed in favor of suit in the United States. "Where the court does not weigh the relative advantages of the respective forums but considers only the disadvantages of one, it has abused its discretion." <u>SME Racks, Inc.</u>, 382 F.3d at 1100 (quoting <u>La Seguridad</u>, 707 F.2d at 1308)). Because I conclude the abuse of discretion standard has been met in this case, I would vacate the district court's order and remand with instructions to reconsider the balance of the public and private interests consistent with this opinion. Accordingly, I respectfully dissent.