[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15451
Non-Argument Calendar
_____

D.C. Docket Nos. 6:11-cv-01575-CEH; 6:09-bk-01955-KSJ


In Re: SUPERIOR HOMES & INVESTMENTS, LLC,

Debtor.
_____

CHRISTOPHER APPS, et al.,

Plaintiffs,

RUSSEL KING,
LORI LYNNE KING,
KEITH MEALAND,
VALERIE MEALAND,
DAVID SHEPPARD,
GILLIAN SHEPPARD,

Plaintiffs – Appellants,

versus

ROBERT M. MORRISON,
THE SUPERIOR GROUP, LLC,
a.k.a. Superior Group, LLC,

SUPERIOR REAL ESTATE, LLC,
SUPERIOR FINANCIAL GROUP, LLC,
SUPERIOR GROUP MANAGEMENT, LLC,
d.b.a. The Superior Group of Companies, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 10, 2013)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

This appeal arises from the bankruptcy court's approval of a settlement agreement (the Compromise), entered on September 1, 2011, pursuant to Federal Rule of Bankruptcy Procedure 9019. The Compromise contained a Bar Order that prevented three cases from proceeding in Florida's state courts. On this appeal, we address whether the bankruptcy court abused its discretion in barring those claims. For the reasons that follow, we conclude that it did not.

## I.

On February 20, 2009, numerous creditors filed a Chapter 11 involuntary bankruptcy petition against Superior Homes & Investments, LLC (the Debtor). There were over 650 claims asserted against the Debtor, 400 of which concerned unreturned deposits paid to the Debtor totaling $33,000,000. Robert Morrison was

2

appointed as Chapter 11 Trustee (Trustee) of the estate (Estate).  In November 2009, the bankruptcy court converted the case to Chapter 7.

During his investigation of the Debtor's books and records, the Trustee discovered that the Debtor had made a number of transfers to its principals and affiliated entities (collectively, the "Non-Debtor Defendants"), which were potentially subject to avoidance under the Bankruptcy Code and Florida law.  The Trustee also determined that these transfers rendered indistinguishable the assets of the Debtor and Non-Debtor Defendants.  As a result, on February 18, 2011, the Trustee filed a complaint (the Adversary Proceeding) against the Debtor and the Non-Debtor Defendants to recover the allegedly fraudulent transfers made between the Debtor and the Non-Debtor Defendants during the time leading up to the bankruptcy case.

Based on the Non-Debtor Defendants' cooperation during the Adversary Proceeding, the Trustee determined that they had approximately $1,000,000 in cash and assets available to satisfy a judgment entered against them.  However, the Trustee was concerned that the $1,000,000 in assets would be exhausted by the Non-Debtor Defendants' defense of state-court cases filed by 560 creditors of the Estate.  These creditors sought to recover from the Non-Debtor Defendants the allegedly fraudulent transfers made between the Debtor and the Non-Debtor Defendants.

In order to safeguard the $1,000,000 for the benefit of the Estate and all of its creditors, the Trustee constructed a compromise that would result in the Non-Debtor Defendants paying $800,000 to the Estate in exchange for the entry of an order barring further litigation against the Debtor and the Non-Debtor Defendants (the Bar Order).  This would enjoin the creditors' state-court litigation against the Non-Debtor Defendants.  Of those creditors, 116 (the Appellants) objected to the Bar Order, requesting that the bankruptcy court allow a judgment to issue against the Non-Debtor Defendants in the state-court proceedings so that Appellants could use the judgment to collect from other sources of recovery, such as insurance. Such an agreement is typically called a *Coblentz* agreement.[1]  On September 1, 2011, the bankruptcy court denied Appellants' request and entered the Bar Order. On September 20, 2012, the district court affirmed the bankruptcy court's approval of the Compromise and entry of the Bar Order.  This appeal followed.

## II.

When a district court affirms a bankruptcy court's order, this court reviews the bankruptcy court's decision on appeal.  *In re Mosley*, 494 F.3d 1320, 1324 (11th Cir. 2007).  We review the bankruptcy court's legal conclusions de novo and

---

[1] *See Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059, 1063 (5th Cir. 1969).  A *Coblentz* agreement, generally speaking, is a settlement agreement where "an insurer who ha[s] refused to handle its insured's defense, thus leaving its insured to his own resources, was bound by the terms of a negotiated final consent judgment entered against the insured." *Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008) (internal quotation marks omitted).

its factual findings for clear error. *See In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003) (per curiam). We review a bankruptcy court's approval of a settlement agreement for abuse of discretion. *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000).

Appellants first contend that the bankruptcy court did not have subject matter jurisdiction over Appellants' state-court litigation against the Non-Debtor Defendants. We disagree. Congress intended bankruptcy jurisdiction to extend to "all civil proceedings" that are "related to" bankruptcy cases. 28 U.S.C. § 1334(b). In the bankruptcy context, we have interpreted "related to" jurisdiction as extending to those proceedings that "could conceivably have an effect on the estate being administered in bankruptcy." *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 453 (11th Cir. 1996) (internal quotation marks omitted). This extends to "suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5, 115 S. Ct. 1493, 1498 n.5 (1995) (citing Collier on Bankruptcy ¶ 3.01[1] [c] [iv], p. 3-28 (15th ed. 1994)). Put another way, there must be "some nexus between the civil proceeding and the title 11 case." *Munford*, 97 F.3d at 453.

We agree with the bankruptcy court and the district court that the state-court litigation enjoined by the Bar Order had a direct impact on the Estate. In *Munford*, we determined that bankruptcy jurisdiction properly extended to a dispute between

5

third parties in an adversary proceeding and empowered the bankruptcy court to bar litigation between the parties pursuant to a Rule 9019 compromise. *Id.* at 453–54. Munford, the debtor, had filed for bankruptcy after a failed leveraged buyout. *Id.* at 452. Munford then initiated an adversary proceeding seeking avoidance of certain transfers with numerous parties, including Valuation Research Company (VRC). *Id.* VRC offered $350,000 to settle the claims on the condition that the bankruptcy court enjoin the non-settling defendants from seeking contribution or indemnification against VRC or its insurer. *Id.*

We held that the potential third-party lawsuits against VRC could conceivably affect the handling and administration of the bankruptcy estate. *Id.* at 454. Similarly, the state-court litigation at issue here would directly impact the Estate because the Trustee would not have received the $800,000 settlement in the absence of the Bar Order. Therefore, we find no merit in Appellants' argument that the Trustee had no standing to assert a claim, because the Trustee did precisely what he had the authority to do: he requested entry of the Compromise and the Bar Order, which was well within the bankruptcy court's power as a court sitting in equity. *See* 8 U.S.C. § 105; *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I. & P. Ry. Co.*, 294 U.S. 648, 675, 55 S. Ct. 595, 605–06 (1935) (noting that a bankruptcy court has "[t]he power to issue an injunction when necessary to prevent the defeat" of its jurisdiction); *Alderwoods Grp., Inc. v.*

*Garcia*, 682 F.3d 958, 967 n.19 (11th Cir. 2012) (noting that a bankruptcy court may issue "any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code" (internal quotation marks omitted)).

Appellants next attack the propriety of the Compromise based on the factors from *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990).  In *Justice Oaks*, we identified the four factors a bankruptcy court must look to in evaluating a compromise:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

898 F.2d at 1549.

Appellants' brief focuses solely on the fourth factor: the "paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Justice Oaks*, 898 F.2d at 1549.  Appellants argue that the bankruptcy court abused its discretion in applying this factor because the Compromise will provide Appellants with a 2¢ return for each dollar of their deposit; and also because the Compromise does not contain *Coblentz* agreements, which would allow Appellants to pursue the Non-Debtor Defendants' insurers.

Again, we disagree.  Although Appellants might receive only 2¢ on the dollar, this out-of-context observation ignores the fact that the Debtor is practically insolvent and the Non-Debtor Defendants—pursuant to the Compromise—are parting ways with approximately 80% of their remaining assets.  Certainly, a *Coblentz* agreement would have been more beneficial to Appellants than the Compromise as it stands now, but we hardly think that the bankruptcy court abused its discretion in approving the Compromise and the Bar Order.  Allowing the state-court litigation to continue would have drained the Non-Debtor Defendants' resources and allowed Appellants to make an end-run around the normal bankruptcy procedure for distribution of the Estate.  Therefore, the Trustee did what was, in his business judgment, in the best interest of the Estate by structuring the Compromise and its Bar Order, and the bankruptcy court did not abuse its discretion in approving them.

     **AFFIRMED**.