**IN RE JIANGBO PHARMACEUTICALS, INC. f/k/a Genesis Pharmaceuticals Enterprises, Inc., Debtor.**

**Case No. 13–15624–BKC–RBR**

United States Bankruptcy Court, S.D. Florida, Broward Division.

Signed November 20, 2014

Filed November 24, 2014

---

Jiangbo Pharmaceuticals, Inc., pro se.

Eyal Berger, Esq., Fort Lauderdale, FL, for Petitioning Creditor.

Mark Bonacquisti, Stephen C. Breuer, John A. Moffa, Esq., Plantation, FL, David C. Cimo, Esq., Marilee A. Mark, Miami, FL, for Trustee.

Aaron S. Weiss, Steven J. Brodie, Carlton Fieldo, P.A., Miami, FL, for National Union Fire Insurance Company of Pittsburgh, PA.

Chapter 7

***ORDER GRANTING MOTION, AS AMENDED, OF CHAPTER 7 TRUSTEE: TO APPROVE SETTLEMENT AND COMPROMISE OF CONTROVERSY WITH ELSA SUNG AND REQUEST FOR ENTRY OF A BAR ORDER [D.E. 101, 135] AND DENYING THE MOTION FOR RELIEF FROM STAY [D.E. 87]***

Raymond B. Ray, Judge, United States Bankruptcy Court

THIS MATTER came before the Court for evidentiary hearing on September 19, 2014, upon the Motion of Chapter 7 Trustee Sonya L. Salkin (the "Trustee"): (I) to Approve Settlement and Compromise of Controversy with Former Officer of Debtor, Elsa Sung ("Sung"), and Request for

Entry of Bar Order; and (II) Requesting Authorization to Approve and Pay Earned Contingency Fee of $208,250 to the Trustee's Special Counsel [D.E. 101] (the "9019 Motion") and the Amendment to the 9019 Motion [D.E. 135]; the Securities Plaintiffs' Limited Objection to the 9019 Motion [D.E. 114]; the Trustee's Notice of Reliance Upon Supplemental Authority in Further Support of Approval of Settlement and Entry of Bar Order and Memorandum of Law [D.E. 138]; the Trustee's Reply to Securities Plaintiffs' Limited Objection [D.E. 139]; the Securities Plaintiffs' Motion for Relief from the Automatic Stay [D.E. 87] (the "Stay Relief Motion"); the Trustee's Response to the Stay Relief Motion [D.E. 116]; and the Rosen Law Firm, P.A.'s Response to the 9019 Motion and Cross Motion for Award of Attorneys' Fee and Costs in the Amount of $210,808.69 and Fee Application [D.E. 117] (the "Rosen Pleading"); the Trustee's Reply to the Rosen Pleading [D.E. 122].

After having considered the filings of the respective parties, all of the evidence presented and admitted, including the testimony and sworn declarations of the Trustee [D.E. 112, 137] and Peter Critchell ("Critchell"), a representative of the insurance carrier, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") [D.E. 136], taken judicial notice of documents pursuant to Federal Rule of Evidence 201 [D.E. 118], heard argument of counsel, and being otherwise duly advised in the premises, the Court finds and concludes as follows:

## I. *FINDINGS OF FACT*

### A. *Background*

On March 13, 2013 (the "Petition Date"), Pope Investments, LLC, Hua–Mei 21st Century Partners, LP, and Guerilla Partners, LP (collectively, the "Petitioning

Creditors") filed a Chapter 7 Involuntary Petition against Jiangbo Pharmaceuticals, Inc. f/k/a Genesis Pharmaceuticals Enterprises, Inc. ("Jiangbo" or the "Debtor") [D.E. 1]. On April 15, 2013, the Court entered its Order for Relief in Involuntary Case and Order Setting Deadline for Filing Schedules, Statements, and Other Documents. [D.E. 17]. On April 17, 2013, Salkin was appointed as the Chapter 7 Trustee in this case [D.E. 18] and she has been administering the Estate since that date.

Prior to the Petition Date, certain shareholders of Jiangbo commenced a shareholder derivative action styled *William Lindquist and Derek J. Bruce, Derivatively and on Behalf of Jiangbo Pharmaceuticals, Inc., v. Cao Wubo, et al.*, Case No. 11–23876–CIV–COOKE, pending in the United States District Court for the Southern District of Florida (the "Shareholder Derivative Action"). In their Second Amended and Consolidated Verified Shareholder Derivative Complaint (the "Complaint"), the plaintiffs sought an award of compensatory damages based on alleged acts and omissions of the Debtor's former officers and directors (the "D & Os"). [Trustee Ex. 5]. Specifically, the Complaint alleges claims of Jiangbo against the D & Os for: (i) breach of fiduciary duty; (ii) corporate waste; (iii) gross mismanagement; and (iv) aiding and abetting breach of fiduciary duty (against Sung only) (collectively, the "D & O Claims"). [Trustee Ex. 5].

On May 22, 2013, the Trustee filed a Suggestion of Bankruptcy in the Shareholder Derivative Action advising the District Court and the parties of the pendency of the bankruptcy case and the imposition of the automatic stay pursuant to section 362. [Shareholder Derivative Action; D.E. 68]. On July 9, 2013, the Trustee filed a Notice of Removal removing the Shareholder Derivative Action to this Court and instituting adversary proceeding 13–01503–RBR (the "D & O Adversary"). [Trustee Ex. 3]. On July 25, 2013, the Trustee filed a Motion to: (i) Intervene as Plaintiff in the Shareholder Derivative Action; (ii) Abate Case to Complete Ongoing Investigation; and (iii) Enforce the Automatic Stay with Respect to All Defendants [D & O Adversary; D.E. 12], which the Court granted on August 20, 2013 [D & O Adversary; D.E. 21].

Prior to the Petition Date, certain shareholders of Jiangbo (the "Securities Plaintiffs") had commenced a class action lawsuit styled *In re Jiangbo Pharmaceuticals, Inc. Securities Litigation*, Case No. 11–22556–CIV–COOKE, pending in the United States District Court for the Southern District of Florida (the "Securities Class Action"), which alleged violations of U.S. securities laws. [Trustee Exs. 6, 7, 9]. Following a dismissal on the merits in favor of Sung [Trustee Exs. 8 & 10], the Securities Class Action is currently on appeal before the Eleventh Circuit Court of Appeals, Case No. 14–10213–DD. [Trustee Exs. 12, 13, 14]. On September 25, 2013, the Securities Plaintiffs filed Proof of Claim No. 5 against the Estate and attached a copy of their Second Amended Complaint for Violations of Securities Laws. [Trustee Exs. 1, 2, 9].

Prior to the Petition Date, National Union issued an Executive and Organization Liability Policy, Policy No. 01–421–72–35 (the "D & O Policy"), covering certain claims made and reported against Jiangbo and its D & Os during the one-year Policy Period beginning December 14, 2009. [Trustee Ex. 15]. The D & O Policy is a $3,000,000 "wasting policy". Critchell of National Union testified that: (i) National Union was and had been advancing defense costs for Sung's defense as to the claims asserted against Sung in the Share-

holder Derivative Action, the D & O Adversary, and the Securities Class Action; (ii) as of September 10, 2014, National Union advanced $1,262,126 in defense fees and costs for Sung under the D & O Policy; (iii) continued litigation will cause this number to substantially increase over time; and (iv) National Union may need to reserve certain D & O Policy funds in connection with the defense of any investigation and enforcement action by governmental entities.

On January 31, 2014, the Court entered an Agreed Order Granting the Securities Plaintiffs Relief from the Automatic Stay and required that the Trustee, Sung, and the Securities Plaintiffs attend and participate in a joint mediation conference "in a good faith attempt to reach a global resolution." [DE. 96] (the "Agreed Order"). On February 24, 2014, the Trustee, Sung, and National Union (the "Settling Parties") and the Securities Plaintiffs mediated their respective claims, demands, and defenses involving Jiangbo. The Trustee testified at the evidentiary hearing that before and after the mediation and the preliminary hearings on the 9019 Motion she made attempts to include the Securities Plaintiffs in a global settlement, to no avail.

**B.** *The Settlement and the 9019 Motion as Amended*

As a result of voluntary exchange of documents, participation in mediation, and extensive negotiations, the Settling Parties agreed that it was in their respective best interests to amicably resolve all claims, demands, and defenses asserted by the parties for the payment of $595,000 (the "Initial Settlement"), which was the subject of the 9019 Motion [D.E. 101] and the

Settlement Agreement to Resolve, Release, and Bar Claims (the "Settlement Agreement") [D.E. 101; Ex. A]. After filing the 9019 Motion and attending preliminary hearings on June 25, 2014 and July 10, 2014, the Settling Parties and Securities Plaintiffs engaged in further settlement discussions that resulted in an amendment to the Settlement Agreement and 9019 Motion. [D.E. 135] (the "Amended Settlement").[1] The Settling Parties agreed that the amount paid to the Estate based on the D & O policy would be increased to $900,000. The Amended Settlement required the Settling Parties to provide releases and was conditioned upon Court approval of the Bar Order.

The Trustee concluded, in her business judgment, that the Amended Settlement meets the standard for judicial approval of settlements in the Eleventh Circuit as set forth in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990). She determined that the Bar Order, an integral component of the Amended Settlement, is fair and equitable under the prevailing law in the Eleventh Circuit, *In re Munford*, 97 F.3d 449 (11th Cir.1996), and its progeny. The Amended Settlement is structured to provide the Estate, which currently has no cash or other tangible assets of value, with an immediate and substantial recovery while eliminating litigation costs and uncertainty as well as collection. The Trustee contemplated: (i) the nature of the $3,000,000 "wasting policy" that provided D & O coverage, in which National Union has already advanced $1,262,126 in defense fees and costs for Sung; (ii) the fact that defense fees and costs continue to accrue as a result of the appeal pending in the Securities Class Action, among other litigation, and this would persist unless a

---

**1.** Once again, no settlement was achieved between the Securities Plaintiffs and the Trustee or Sung.

settlement was reached (without which the Estate could have realized little to no net benefit); and (iii) Sung's unrebutted representation that she does not have sufficient non-exempt assets to satisfy a large judgment against her or to offer any material settlement, and that D & O Policy is the exclusive means of funding the Amended Settlement.

The Trustee testified that she was concerned that: (i) continued litigation against Sung in respect of the D & O Adversary and appeals to the Eleventh Circuit, as well as the appeal pending in the Securities Class Action, could serve to substantially deplete the remaining available insurance proceeds, thereby decreasing the sums that the Trustee could obtain in enforcing a potential judgment; and (ii) a significant portion of the remaining insurance proceeds will be expended on defense costs if this matter is not resolved expeditiously. The Court finds that entering into the Amended Settlement was a proper exercise of the Trustee's business judgment.

The Securities Plaintiffs were the only party in interest to object to the substance of the 9019 Motion, as amended, on the basis that the proposed Bar Order is not fair and equitable under the circumstances. [D.E. 114]. The Securities Plaintiff's claims, which are the subject of a proof of claim filed against the Estate, arise out of the same facts and circumstances underlying the Trustee's D & O Claims. Both sets of claims involve acts and omissions of the Debtor's former D & Os, among other misdeeds, disseminating materially inaccurate information about the financial affairs of the Debtor to third parties. [Trustee Exs. 2, 3, 5, 7, 9].

## II. CONCLUSIONS OF LAW

### A. Approval of the Amended Settlement Agreement

 The Court has broad discretion to approve a compromise or settlement,

and a settlement should be approved unless it "falls below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599 (2d Cir.1983), cert. denied 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); In re S & I Investments, 421 B.R. 569, 583 (Bankr.S.D.Fla.2009)(citing In re Bicoastal Corp., 164 B.R. 1009, 1016 (Bankr. M.D.Fla.1993). The following four-part standard applies for judicial approval of settlements in the Eleventh Circuit as set forth in In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir.1990): (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily involved; and (iv) the paramount interest of the creditors and proper deference to their reasonable views. The application of the facts to the law in this case results in the following analysis and conclusion that the Amended Settlement satisfies the requisite standard.

### 1. The probability of success in the litigation

Although the Trustee testified that she believes in her ability to prevail in the D & O Adversary against Sung, she also recognized that the Estate's claims against Sung involve material factual and legal disputes related to actions or inaction during the course of business to which Sung intends to assert a number of complex defenses. Sung has advised and demonstrated the intention to vigorously defend the claims at trial, and all appellate levels, if a settlement could not be reached. Indeed, at least $1,262,126 in defense costs have already been expended. Therefore, despite the Trustee's confidence regarding the probability of success in the litigation, she

acknowledged that the outcome of litigation is never certain.

### 2. The difficulties, if any, to be encountered in the matter of collection

The only available insurance for the claims at issue is the D & O Policy, which is a $3,000,000 "wasting policy", of which $1,262,126 has been expended for defense costs. This is currently subject to other competing claimants and payment of defense costs in connection with the appeal currently pending in the Securities Class Action. The Trustee expressed concern that continued litigation and appeals to the Eleventh Circuit and, possibly a writ of certiorari to the U.S. Supreme Court, could serve to substantially, if not completely, deplete the remaining available insurance proceeds. Likewise, Sung represented in the Amended Settlement that she has insufficient non-exempt assets to materially contribute to a settlement or to pay in the event of an adverse judgment against her. The Estate could encounter material impediments to collection should it be required to litigate the D & O Adversary against Sung through the conclusion of a successful jury trial verdict and any appeals.

### 3. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily involved

This matter involves challenges to actions, inactions, and business decisions made by both domestic and foreign D & Os over a course of several years in connection with the business operations and transactions of the Debtor, insiders, and foreign affiliates. The litigation in this matter is both complex and expensive to pursue because it will require, among other tasks, significant factual discovery and substantial expert witness testimony at great expense to the Estate. In addition, the facts and circumstances of the claims against Sung are extensive and would require testimony from at least two dozen fact witnesses, many of which are located in China. Furthermore, the Trustee testified that regardless of the outcome at the trial level, the matter would likely be appealed. The costs associated with litigating these issues through the appellate levels would be significant and would necessarily result in significant delay.

### 4. The paramount interest of the creditors' reasonable views

The Amended Settlement provides the Estate with an opportunity to efficiently settle significant claims on favorable terms, without the need for potentially costly and protracted litigation through trial and potential appeals. It will also provide the Estate with a significant recovery. As such, the Amended Settlement serves the paramount interest of creditors. The Petitioning Creditors, which comprise substantially the entire general unsecured creditor body [Trustee Exs. 1, 19, 20, 21], support the Amended Settlement.

The Amended Settlement Agreement meets the standard for approval set forth by the Eleventh Circuit Court of Appeals in *Justice Oaks* and approval is proper pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Court specifically determines that the Amended Settlement is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the best interests of the Estate because the settlement: (i) precludes any risks associated with litigation and collection in this matter; (ii) provides a dividend available to creditors; and (iii) allows for a distribution of the proceeds within a reasonable time.

**B.** *The Bar Order Satisfies the Requirements for Approval in the Eleventh Circuit*

1. *Controlling and Persuasive Bar Order Case Law*

The Bar Order requested in the 9019 Motion, as amended, likewise satisfies the applicable provisions of the Bankruptcy Code and relevant law in the Eleventh Circuit, specifically *In re Munford*, 97 F.3d 449 (11th Cir.1996) and its progeny.[2] Bar orders that are incorporated into settlement agreements are considered to be fair and equitable if the bar order fulfills the long-standing public policy of encouraging pretrial settlements, the settlement satisfies the requirements for the approval of settlements under *Justice Oaks*, the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in *Munford*, including: (i) the non-debtor third-party claims which will be barred are interrelated with the estate's claims; (ii) the parties opposed to the bar order have not presented sufficient evidence of the strength and existence of their claims against the beneficiary of the bar order; (iii) the estate's litigation against the beneficiary of the bar order is complex; and (iv) the continued litigation by the estate and other parties against the beneficiary of the bar order will deplete resources.

 In the Eleventh Circuit, bar orders limiting or affecting non-settling parties' rights are a necessary and permissible tool available to accomplish meaningful settlements for the benefit of the estate and creditors. When a requested bar order is interrelated with a trustee's claim, an essential and critical element of the settlement, necessary to achieve complete resolution of the issues within the settlement agreement, and fair and equitable, then the entry of a bar order is a proper exercise of the Court's power under section 105. *See Munford*, 97 F.3d at 449 (finding bankruptcy court had authority under section 105(a) to enter order barring claims against certain defendants); *see also Apps v. Morrison (In re Superior Homes & Invs., LLC)*, 521 Fed.Appx. 895, 897 (11th Cir.2013) (affirming bar order involving "suits between third parties" where cash and assets "would be exhausted by the non-Debtor Defendants' defense of state court cases"). The court in *Munford* specifically identified the important policy reasons for granting bankruptcy courts the power to enter bar orders, including: (i) "public policy favors pretrial settlement so as to prevent the depletion of the parties' resources and taxpayer dollars; litigation costs are particularly burdensome on a bankrupt estate"; and (ii) "bar orders play an integral role in facilitating settlements." *Munford*, 97 F.3d 449, 455 (11th Cir.1996).

2. *The Bar Order Satisfies the Standard Set Forth by the Eleventh Circuit*

**The Bar Order is Integral to the Settlement**

 The evidence before the Court shows that the Bar Order is an integral part of the Amended Settlement without which it would not be consummated. Sung and National Union would not enter into

2. *See, e.g., Apps v. Morrison (In re Superior Homes & Invs., LLC)*, 521 Fed.Appx. 895 (11th Cir.2013); *In re U.S. Oil & Gas Lit*, 967 F.2d 489 (11th Cir.1992); *In re Rothstein Rosenfeldt Adler, P.A.*, 09–34791–BKC–RBR, 2010 WL 3743885 (Bankr.S.D.Fla. Sept. 22, 2010); *In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268 (Bankr.S.D.Fla. Aug. 27, 2010) (Isicoff, J.); *In re First NLC Financial Serv., LLC, et al.*, Case No. 08–10632–PGH [D.E. 865] (Hyman, J.); *In re Rothstein Rosenfeldt Adler, PA.*, Case No. 09–34791–RBR [D.E. 1017] (Ray, J.).

the Amended Settlement without the Bar Order, nor would National Union agree to fund the Settlement Amount without entry and approval of the Bar Order. The Bar Order directly impacts the Estate because the Estate will not receive the $900,000 payment and other consideration absent the Court's approval of the Bar Order.

### The Bar Order is Consistent with Public Policy Encouraging Settlement

Approval of the Bar Order, as an integral part of the Amended Settlement, facilitates and fulfills the long-standing public policy of encouraging pretrial settlements.

### The Settlement Satisfies Justice Oaks

For the forgoing reasons, the Amended Settlement satisfies the requirements for approval of settlements under *Justice Oaks*.

### The Claims Are Interrelated

From a review of the applicable complaints [Trustee Exs. 2, 3, 5, 7, 9], it is apparent that the claims asserted, and those which the Trustee could and would assert against Sung in the D & O Adversary, are interrelated with the claims asserted by the Securities Plaintiffs against Sung and Jiangbo. The causes of action arise out of the same common nucleus of operative facts and circumstances and are based on similar, if not identical, acts and omissions. The applicable complaints alleged the same pre-petition acts and omissions of Sung, Jiangbo, and the former domestic and foreign D & Os as forming the basis of liability. They sought damages based upon acts and omissions involving the disclosure of materially inaccurate information to third parties and improper insider transactions. [Trustee Exs. 2, 3, 5, 7, & 9].

### The Claims Being Barred Lack Sufficient Evidence of Strength & Existence

The Securities Class Action was dismissed by the Honorable Marcia Cooke on the merits in favor of Sung in the District Court [Trustee Exs. 8, 10], and is currently on appeal before the Eleventh Circuit Court of Appeals [Trustee Exs. 12, 13, 14]. This supports the allegation that the Securities Plaintiffs have not presented sufficient evidence of the strength and existence of their claims against Sung and National Union. Based on these circumstances, the Court can soundly conclude that the claims of Securities Plaintiffs lack sufficient strength and are likely not viable.

Furthermore, the Securities Plaintiffs' asserted claim against Jiangbo are unlikely to be meritorious based upon evidence presented by Critchell. National Union denied coverage for Jiangbo and the individual insureds, other than Sung, because they violated their duties under Section 8 of the D & O Policy, which obligated all insureds to give National Union "full cooperation and such information as it may reasonably require". Additionally, the D & O Policy clearly states that the insureds retained the duty to defend all claims made against the D & O Policy. None of the insureds, except for Sung, defended the claims, and such failure to defend resulted in clerk's defaults being entered against Jiangbo and two individual insureds. [Trustee Exs. 16, 17, 18]. In light of the breaches of the cooperation and defense obligations of the D & O Policy, National Union denied coverage for all insureds, except for Sung. [Trustee Exs. 17 18].

### The Claims are Complex and Continued Litigation Will Deplete Resources

As discussed above, the Estate's litigation against Sung is complex. These com-

plexities apply equally to the Securities Plaintiffs asserted claims against Sung and Jiangbo. Absent approval of the Amended Settlement and Bar Order, continued litigation against Sung by the Trustee, and by the Securities Plaintiffs in connection with the pending and any future appeals, as well as any continued litigation against Jiangbo, will serve to: (i) substantially deplete the resources of the Estate with significant litigation costs and the remaining available insurance proceeds of the $3,000,000 "wasting asset" D & O Policy.

The Bar Order satisfies the requisite standard under the prevailing law in the Eleventh Circuit and is fair and equitable. In addition, given the subordinated nature of their class action proof of claim filed against the Estate [Trustee Ex. 2], the Securities Plaintiffs would likely never receive a distribution of any D & O settlement proceeds from the Estate, even with a full tender of the remaining policy limits under the D & O Policy. However, they at least have an opportunity to share in global Estate recoveries subject to the Bankruptcy Code distribution scheme. Lastly, the Court notes that the Bar Order is narrowly tailored because it expressly does not prohibit the Securities Plaintiffs from pursuing claims unrelated to the D & O

Policy against the D & Os other than Sung.

Accordingly, it is

**ORDERED** as follows:

1. The 9019 Motion [D.E. 101], as amended [D.E. 135], and the Request for the Entry of the Bar Order is **GRANTED.**

2. The Securities Plaintiffs' Limited Objection is **OVERRULED.**

3. By separate hearing and Order, the Court will consider and rule on: (i) the Trustee's Request for Authorization to Approve and Pay Earned Contingency Fee [D.E. 101, 135]; (ii) the Rosen Pleading [D.E. 117]; and (iii) the Trustee's Response [D.E. 122] thereto.[3]

4. The Motion for Stay Relief [D.E. 87] is **DENIED,** except as set forth in the Agreed Order Granting the Securities Plaintiffs' Stay Relief [D.E. 131].[4]

5. The Court reserves jurisdiction to enforce this Order.

**ORDERED in the Southern District of Florida on November 20, 2014.**

---

3. The Court directs the Trustee to withhold the Settlement Proceeds to be paid under the Amended Settlement pending further Order of the Court.

4. The automatic stay is modified solely to permit the Securities Plaintiffs to: (i) obtain a

judgment against Wubo Cao ("Cao") and Linxian Jin ("Jin") in the *In re: Jiangbo Pharmaceuticals, Inc. Securities Litigation* Case No. 11–22556–CIV–COOKE/BANDSTRA and (ii) proceed with collection efforts against Cao and Jin in China.