In re PALM BEACH FINANCE PART-
NERS, L.P., and Palm Beach Fi-
nance II, L.P., Debtors,

The Ashton Revocable Living Trust
and Marie Ashton, Appellants,

v.

Barry E. Mukamal, Lquidating
Trustee, Appellee.

No. 9:14–cv–80708–KMM.

United States District Court,
S.D. Florida.

Signed March 19, 2015.

Helen D. Chaitman, Becker & Poliakoff, LLP, New York, NY, Lisa Marie Castellano, Tampa, FL, for Appellants.

Daniel Michael Samson, Samson Appellate Law, Jessica Lynn Wasserstrom, James Calvin Moon, Joshua Alan Marcus, Solomon Brauner Genet, Meland Russin & Budwick, Elliot Burt Kula, Kula & Associates, P.A., Miami, FL, William Aaron Daniel, Kula, Samson, LLP, Aventura, FL, John Daniel Eaton, Shawde & Eaton, PL, Weston, FL, for Appellee.

### *ORDER*

K. MICHAEL MOORE, Chief Judge.

THIS CAUSE comes before the Court on appeal from the Bankruptcy Court's Order Granting Liquidating Trustee's Motion to Approve (1) Settlement with the Ashton Revocable Living Trust and Marie Ashton and (2) Payment of Contingency Fee (AA514–16 [1]) (the "Settlement Order") (Bankr. Case Nos. 09–36379–PGH, 09–36396–PGH). The Ashton Revocable Living Trust and Marie Ashton ("Appellants [2]") filed an Initial Brief (Appeal ECF No. 15), Barry E. Mukamal ("Appellee") filed a Response Brief (Appeal ECF No. 24), and Appellants filed a Reply Brief (ECF No. 26). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

---

**1.** The Appeal Appendix shall be cited to herein as "AA."

**2.** The term "Appellants" shall refer to Marie Ashton and the Ashton Revocable Trust in all proceedings before this Court, the Bankruptcy Court, and the Minnesota Bankruptcy Court.

For the reasons stated herein, the Bankruptcy Court's Settlement Order is AFFIRMED.

## I. *BACKGROUND*

### A. *The Adversary Proceeding*

Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P. (collectively, "Debtor"), invested with Thomas Petters and Petters Company, Inc. ("PCI"), which was revealed to be a Ponzi scheme and placed into a federal receivership. PCI filed for bankruptcy in Minnesota (the "Minnesota Bankruptcy Court"), and Debtor, as a result of the Ponzi scheme, filed bankruptcy petitions in Florida (the "Bankruptcy Court"). AA at 1–5, 110–11.

Appellee, as Liquidating Trustee, initiated an adversary proceeding against Ashton (the "Adversary Proceeding") seeking avoidance and recovery of allegedly fraudulent transfers and profits gained by Appellants as a result of Appellants' investment in the Ponzi scheme. *Id.* at 1–12. The PCI trustee filed a similar adversary proceeding against Appellants in the Minnesota Bankruptcy Court.

### B. *The Joint Mediation*

The aforementioned Trustees agreed to jointly mediate with Appellants and other alleged fraudulent transferees, and agreed to allocate between themselves any recovery obtained under a settlement. *Id.* at 23–32. The Bankruptcy Court directed the mediation to be held in Minnesota, for the Parties' convenience, and the mediation was held on August 21, 2012. *Id.* at 13–20. The Appellee, the PIC Trustee, and Appellants were present at the mediation. *See id.* at 260, 768. Appellants were represented at the mediation by Ashton (Marie Ashton) and Appellants' Counsel Appleby ("Appellants' First Counsel"). *Id.*

Former Minnesota Supreme Court Justice James H. Gilbert acted as Mediator and had the Parties execute his standard pre-mediation agreement, which referenced *inter alia*, the Minnesota Civil Mediation Act (the "MCMA") and its requirements. *Id.* at 764–67. The Court will discuss the MCMA further below. The mediation ended with an oral settlement agreement (the "Settlement Agreement") between the Parties. *Id.* at 249, 262, 311, 328–30, 396. Justice Gilbert therefore submitted a Mediator's Report to the Bankruptcy Court stating that the mediation ended in a settlement. *Id.* at 300–01, 336, 394–96, 768–69. No Parties objected to the Mediator's Report. *See id.*

### C. *The Settlement Agreement*

The principal terms of the Settlement Agreement were (1) payment by Appellants of $225,000, in exchange for (2) a global release from both Trustees of any further liability relating to the litigation. *Id.* at 262, 311, 315, 329–30, 388, 397. On August 22, 2012, Appellee sent Appellants' First Counsel a draft memorializing the terms of the Settlement Agreement. *Id.* at 321, 332, 343. Appellants' First Counsel responded with a redline copy, proposing nominal revisions and offering no alteration to the release provisions. *Id.* at 321–22, 332–33. Numerous correspondence between Appellee and Appellants' First Counsel were exchanged, but Appellants' First Counsel never expressed any concern as to the release provisions. *See* Appellee Br. at 6. Hence, on November 26, 2012, at the November 2012 Pretrial Conference, Appellee identified the Adversary Proceeding as "Settled (9019 not yet filed)." AA at 78–85. The Bankruptcy Court therefore dismissed the Adversary Proceeding on December 3, 2012, and retained jurisdiction to approve and enforce the Settlement Agreement. *Id.* at 770–71.

Appellants did not object to the order dismissing the Adversary Proceeding.

Several months after the mediation, Appellants separated from Appellants' First Counsel and obtained new counsel ("Appellants' Second Counsel"). Only after obtaining Appellants' Second Counsel did Appellants contend that the release should have been a global release not only from both Trustees but from anybody else, including non-participants in the mediation. *See id.* at 247–50, 303–05, 326, 359–64, 388, 392–98.

### D. *The Motion to Approve Settlement and the Settlement Order*

Appellee later moved for final approval of the Settlement Agreement. *Id.* at 109–32. Appellee argued that, under the applicable standard for approval of settlements, the oral settlement agreement should be approved. *Id.* at 116–118. Appellants opposed approval of the Settlement Agreement arguing, among other things: (1) there was no agreement as evidenced by the absence of a writing; (2) the Settlement Agreement was not enforceable because it was not reduced to writing, as required by the MCMA; and (3) any settlement was conditioned upon Appellants receiving a release from all potential future clawback suits, including those that might be asserted by non-participants in the mediation. *Id.* at 133–40.

The Bankruptcy Court held an evidentiary hearing because Appellants made several assertions and arguments that conflicted with Appellee's assertions that a Settlement Agreement had been reached at the mediation. *See id.* at 235–405. After the hearing, the Bankruptcy Court entered a forty-nine-page Findings of Facts and Conclusions of Law, in which it resolved conflicting witness testimony, made credibility determinations, and explained its legal conclusions. *Id.* at 465–513.

Generally, the Bankruptcy Court found Appellee's witnesses and version of the events credible, and rejected Appellants' supposed belief that a Settlement Agreement had not been reached at mediation. *See id.* The Bankruptcy Court concluded that: (1) Minnesota law governed the dispute; (2) Appellants failed to object to the Settlement Agreement and to the characterization of Adversary Proceeding as settled at the November 2012 Pretrial Conference, after the order dismissing the Adversary Proceeding, after the filing of the Minnesota 9019 Motion to Approve Settlement, at the hearing on the Minnesota 9019 Motion to Approve Settlement, and after entry of the Minnesota 9019 Settlement Order; (3) the Parties believed they had reached a settlement at the mediation; (4) the release pertained only to claims asserted by the Trustees who participated in the mediation; (5) Appellants' unmanifest intentions could not alter the Settlement Agreement; and (6) it was only after Appellants consulted with Appellants Second Counsel that any intention not to be bound by the Settlement Agreement was first voiced. *Id.* at 485–86, 488–89, 494–97, 499–500, 503. The Bankruptcy Court therefore entered the Settlement Order, pursuant to its Findings of Fact and Conclusions of Law, and found the Settlement Agreement to be valid and enforceable.

Appellants filed the instant appeal arguing that the Bankruptcy Court: (1) lacked jurisdiction to enter the Settlement Order because the Settlement Agreement compromised fraudulent conveyance claims; (2) erred in applying judicial estoppel to preclude Appellants from asserting that the Settlement Agreement was unenforceable; (3) erred in entering the Settlement Order approving the Settlement Agreement because the Settlement Agreement was oral and Appellants' First Counsel

lacked authority to settle; and (4) erred in refusing to rescind the Settlement Agreement pursuant to Appellants' unilateral mistake argument.

## II. DISCUSSION

### A. Bankruptcy Court's Jurisdiction to Enter the Settlement Order

The first issue is whether the Bankruptcy Court had jurisdiction to enter the Settlement Order pursuant to Rule 9019, where the Settlement Order compromised fraudulent transfer claims.

#### 1. Standard of Review

■ The Bankruptcy Court's subject matter jurisdiction presents a question of law and is therefore reviewed *de novo*. *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir.2005); *In re Lancaster Steel Corp.*, 284 B.R. 152, 157 (S.D.Fla. 2002).

#### 2. Legal Standard

■ Bankruptcy courts have jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Federal Rules of Bankruptcy Procedure grant a bankruptcy court the authority to approve a compromise or settlement of claims. Fed. R. Bankr.P. 9019. Matters concerning the administration of the estate are core proceedings. 28 U.S.C. § 157(b)(2)(A). Where a bankruptcy court exercises jurisdiction over a lawsuit between non-debtor third parties, it must do so under its "related to" jurisdiction. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re Zale Corp.*, 62 F.3d 746, 751 (5th Cir.1995). A civil proceeding is "related to" a case under title 11 when its result "could conceivably have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990). "[It] need not necessarily be against the debtor or against the debtor's property. [It] is related to [the] bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action...." *Id.* If the proceeding "in any way impacts upon the handling and administration of the bankrupt estate," it is "related to" the bankruptcy proceeding. *Id.* Hence, a bankruptcy court has jurisdiction to enter an order approving a settlement of a fraudulent transfer claim that affects the administration of the estate. *See In re Superior Homes*, 521 Fed.Appx. 895, 897–98 (11th Cir.2013); *In re Lemco Gypsum*, 910 F.2d at 788; *see e.g.*, Case No. 1:13–cv–23142–KMM, *In re Michael Samuel* (S.D.Fla. Sept. 29, 2014), ECF No. 30 at 6–9.

#### 3. Analysis

■ Appellants argue that the Bankruptcy Court lacked jurisdiction to enter the Settlement Order because it approved the compromise of a fraudulent transfer claim, which Appellants assert a bankruptcy court may not "adjudicate." Appellants' Br. at 20–21. Appellants fail to cite any case to support their proposition.

The enforcement of a settlement agreement arising from litigation is not an adjudication on the merits of the settled dispute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Bankruptcy Court's jurisdiction and authority to enforce a settlement agreement is not the same as its jurisdiction to adjudicate the underlying claim. *Id.* The Bankruptcy Court here approved a settlement which compromised fraudulent transfer claims which would have affected the administration of the estate. Thus, the Bankruptcy Court had jurisdiction to enter the Settlement Order. *See In re Superior Homes,*

521 Fed.Appx. at 897–98; *In re Lemco Gypsum,* 910 F.2d at 788; *see e.g., In re Michael Samuel,* ECF No. 30 at 6–9.

Accordingly, the Bankruptcy Court's finding of jurisdiction to enter the Settlement Order is AFFIRMED.

## B. *Bankruptcy Court's Application of Judicial Estoppel*

The Court next addresses the Bankruptcy Court's decision to apply judicial estoppel to Appellants' challenge of the Settlement Order. The Bankruptcy Court applied judicial estoppel because "[Appellants] failed, on numerous occasions, to object to the representation that the parties reached a settlement and thus effectively persuaded [the Bankruptcy] Court and the Minnesota Bankruptcy Court to accept the representation that the parties reached a settlement. If the [Bankruptcy] Court allowed [Appellants] to maintain inconsistent positions, it may create the perception that the Bankruptcy Courts were misled." AA at 487. Specifically, the Bankruptcy Court cited the occasions when Appellants: (1) failed to object at the November 2012 Pretrial Conference to the characterization of the Adversary Proceeding as settled; (2) failed to seek relief from the order dismissing the Adversary Proceeding as settled; (3) failed to move to reopen the Adversary Proceeding after it was dismissed as settled; (4) failed to file an objection to the Minnesota 9019 Motion; (5) failed to object at the hearing on the Minnesota 9019 Motion to Approve Settlement; and (6) failed to move to reconsider the Minnesota 9019 Settlement Order. *Id.* at 485–86.

### 1. *Standard of Review*

■ The Court reviews the Bankruptcy Court's application of judicial estoppel only for abuse of discretion. *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir.2010). "[A]buse of discretion review is

'extremely limited' and 'highly deferential.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.,* 578 F.3d 1283, 1288 (11th Cir.2009). Thus, the Court will affirm unless it finds that the Bankruptcy Court made a clear error of judgment or applied the wrong legal standard. *See id.*

■ Where a bankruptcy court's application of judicial estoppel relies on findings of fact, this Court reviews the findings of fact only for clear error. *Tyson Foods,* 595 F.3d at 1273. "The [B]ankruptcy [C]ourt's findings of fact are not clearly erroneous unless, in light of all the evidence, [this Court is] left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharmacy & Discount II, Inc.,* 443 F.3d 767, 770 (11th Cir.2005).

### 2. *Legal Standard*

■ " The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). "Specifically, judicial estoppel is designed to 'prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous' proceeding." *Tyson Foods,* 595 F.3d at 1273. Courts typically consider three factors when deciding whether to apply judicial estoppel: "(1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position … would create the perception that either … court was mislead (sic) and; (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Id.*

■ "[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808, but the Eleventh Circuit will generally require (1) that allegedly inconsistent positions were made under oath in a prior proceeding, and (2) the inconsistencies are calculated to make a mockery of the judicial system. *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir.2004).

### 3. *Analysis.*

■ Here, the Bankruptcy Court applied the exact standard this Court has set out above and cited many of the same cases. *See id.* at 486–87. The only element of the standard the Bankruptcy Court did not explicitly apply is that the Eleventh Circuit generally requires (1) that allegedly inconsistent positions were made under oath in a prior proceeding, and (2) the inconsistencies are calculated to make a mockery of the judicial system. Appellants therefore argue the Bankruptcy Court "totally misunderstood the doctrine of judicial estoppel." Appellants' Br. at 23.

Appellants' argument fails for the following reasons. First, though the Parties' Counsel may not have been specifically under oath, their duties of candor to the bankruptcy courts are sufficiently analogous to being under oath to satisfy any requirement that the prior inconsistent statements be made "under oath," especially considering that judicial estoppel is equitable in nature. *See New Hampshire*, 532 U.S. at 749, 750, 121 S.Ct. 1808; *Tyson Foods*, 595 F.3d at 1273. Second, the Eleventh Circuit's two-pronged analysis is one that is only "generally" required—there is no strict requirement that the previous statements be made literally under oath. *See Parker*, 365 F.3d at 1271.

Indeed, the Supreme Court recognizes that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808. Third, the Bankruptcy Court, notwithstanding its application of judicial estoppel, proceeded to fully consider the question of whether the Parties had entered into an enforceable settlement agreement. *See* AA at 487–88. Based on the foregoing, the Court cannot find that the Bankruptcy Court abused its discretion in applying judicial estoppel. *See Aldana*, 578 F.3d at 1288. The Bankruptcy Court applied the proper legal standard and based its decision on its findings of fact. *See id.*

The Court must therefore address Appellants' argument that the Bankruptcy Court's application of judicial estoppel was based on clearly erroneous factual findings. *See* Appellants' Br. at 24. Appellants' argument essentially is that even though the Bankruptcy Court considered the evidence presented in its own evidentiary hearing and the Minnesota Bankruptcy Court, *see* AA at 235–405, certain portions of the record conflict with the Bankruptcy Court's factual findings. *See id.; seé generally* AA at 465–85 ("Findings of Fact"). However, this Court reviews the Bankruptcy Court's findings of fact only for clear error. *See In re Int'l Pharmacy & Discount II*, 443 F.3d at 770.

This Court is not left with the definite and firm conviction that any of the Bankruptcy Court's findings are mistaken. *See id.* The Bankruptcy Court sat in the best position to resolve any conflicts presented by the facts and witnesses' testimony. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). The Bankruptcy Court fully considered the evidence in reaching its findings of fact. *See* AA at 235–405; 465–85. Thus, Appellants do not

show the Bankruptcy Court committed clear error in its findings of fact, rather, Appellants show only that the Bankruptcy Court made findings of fact unfavorable to Appellants after fully considering the applicable evidence. The Court therefore finds no clear error.

Accordingly, the Bankruptcy Court's decision to apply judicial estoppel precluding Appellants from asserting that they had not entered into an enforceable settlement agreement is AFFIRMED.

### C. *Bankruptcy Court's Approval of the Settlement*

Though the Court has decided that Appellants were properly judicially estopped from arguing that the Settlement is unenforceable, which would end the Court's inquiry regarding the validity of the Settlement Order, the Court will next address the Bankruptcy Court's Settlement Order and decision to approve the Settlement. Appellants argue that the Bankruptcy Court erred in holding that the Settlement was enforceable because: (1) the Minnesota Civil Mediation Act ("MCMA") supposedly requires that all mediated settlements must be in writing in order to be enforceable; (2) the Parties intended not to be bound by the Settlement Agreement until it was reduced to writing; and (3) Appellants' First Counsel was supposedly not authorized to settle claims for Appellants.

#### 1. *Standard of Review*

■ The Court reviews the Bankruptcy Court's approval of the Settlement for abuse of discretion. *Christo v. Padgett,* 223 F.3d 1324, 1335 (11th Cir.2000). "[A]buse of discretion review is 'extremely limited' and 'highly deferential.'" *Aldana,* 578 F.3d at 1288. Thus, the Court will affirm unless it finds that the Bankruptcy Court made a clear error of judgment or applied the wrong legal standard. *See id.*

A bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [B]ankruptcy [C]ourt to judge the credibility of witnesses." Fed. R. Bankr.P. 8013. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Crawford v. Western Elec. Co.,* 745 F.2d 1373, 1378 (11th Cir. 1984).

#### 2. *Legal Standard*

The Mediation Agreement which the Parties signed before their mediation states:

> Pursuant to the requirements of the Minnesota Civil Mediation Act, the mediator hereby advised the parties that: ... (b) signing a mediated settlement agreement may adversely affect the parties' legal rights; ... and (d) a written mediated settlement agreement is not binding unless it contains provisions that it is binding and a provision stating substantially that the parties were advised in writing of (a) through (c) above.

AA at 765. A "[m]ediated settlement agreement' means a written agreement setting out the terms of a partial or complete settlement of a controversy identified in an agreement to mediate, signed by the parties, and dated." Minn.Stat. § 527.33(4).

#### 3. *Analysis.*

■ Appellants first argue the MCMA applied to their mediation, and that the Settlement Agreement reached at the mediation is unenforceable because it was oral rather than written. Assuming, *arguendo,* the MCMA applied to the Parties' mediation, the MCMA does not require that all settlement agreements reached in mediation must be in writing. *See* AA at

765. Instead the MCMA only requires that any *written* mediated settlement agreement must contain provisions stating that the written settlement agreement is binding and that mediator advised the parties of their rights in mediation. *See id.* In other words, there is no requirement that all settlement agreements reached during mediation must be in writing, but there are specific requirements for *written* settlement agreements that are reached during mediation. *See id.* The Parties did not execute a written settlement agreement, so their Settlement Agreement is enforceable regardless of the MCMA requirements outlined in the Mediation Agreement.

The Court next addresses Appellants' argument that the Settlement Agreement is not enforceable because the Parties did not intend to be bound until they had executed a written agreement. *See* Appellants' Br. at 26. In other words, Appellants next argue they did not intend to be bound by the Settlement Agreement until it was written and executed after the mediation conference. *See id.*

▆▆▆▆ General principles of contract law apply in this case. *See* AA at 489. "Minnesota courts determine the existence of a contract using strictly objective measures." *Moga v. Shorewater Advisors, LLC,* Case No. A08–785, 2009 WL 982237, *6 (Minn.Ct.App. April 14, 2009). "Simply because the parties contemplated the drafting of a subsequent formal, written contract does not denote that they did not intend to be bound immediately by their oral or written negotiations." *Nautica Int'l v. Intermarine USA, L.P.,* 5 F.Supp.2d 1333, 1341 (S.D.Fla.1998).

Here, despite Appellants' protestations, the Bankruptcy Court found that the Parties intended to be bound by the terms of the Settlement Agreement as negotiated at the mediation conference. *See* AA at 493–

509. The Bankruptcy Court fully considered the applicable evidence as to whether the Parties intended to be bound by the Settlement Agreement reached at the mediation conference. *See id.* at 488–509, 768 (Mediator's Report stating Parties had reached a Settlement Agreement at the mediation conference in total resolution of their claims). In doing so, the Bankruptcy Court also weighed the credibility of the testifying witnesses and found Appellants' witnesses to be less credible than Appellee's. *See id.* at 493–509. After considering the evidence, the Bankruptcy Court concluded that a valid, enforceable Settlement Agreement had been formed at the mediation. *Id.* at 488–503. Based on the foregoing, and this Court's review of the Bankruptcy Court's analysis, this Court finds no clear error.

Appellants next argue that Appellants' First Counsel did not have authority to settle for Appellants at the mediation. Appellants' Br. at 30–32. This is a sham argument. Marie Ashton participated in the mediation alongside her Counsel and failed to voice any objection to the Settlement Agreement or her Counsel's negotiations. *See* AA at 248–49, 264, 314–315. Appellants failed to object to the Settlement Agreement as binding after receiving the Mediator's Report, after viewing the Minnesota 9019 Order, and during the November 2012 Status Report. *Id.* at 300–336, 394–396, 768–769. The Bankruptcy Court considered these and other relevant facts and found that even if Appellants' Counsel did not have express authority to enter into the Settlement Agreement, Appellants ratified the settlement. *Id.* at 500–03; *see Schumann v. Northtown Ins. Agency, Inc.,* 452 N.W.2d 482, 484 (Minn. Ct.App.1990) (even "[i]n the absence of express authority, oral settlements are binding under three theories: (1) ratification; (2) estoppel; and (3) implied accep-

tance."). The Court therefore finds no basis to reverse the Bankruptcy Court's conclusion that the Settlement Agreement is valid and enforceable.

Accordingly, the Court AFFIRMS the Settlement Order and its analysis concluding that the Settlement Agreement is enforceable.

### D. *Bankruptcy Court's Decision Not to Rescind the Settlement Agreement Based on Ashton's Purported Unilateral Mistake*

Appellants also argued below that the contract should be rescinded under the doctrine of unilateral mistake because Ashton did not understand that the Settlement Agreement was enforceable at the close of mediation. *See* AA at 510–12. Appellants argue here that the Bankruptcy Court erred in not rescinding the Settlement Agreement. Appellants' Br. at 26.

#### 1. *Standard of Review*

The Court reviews the Bankruptcy Court's legal conclusions *de novo*. Fed. R. Bankr.P. 8013; *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir.1991).

A bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr.P. 8013. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Crawford v. Western Elec. Co.*, 745 F.2d 1373, 1378 (11th Cir. 1984).

#### 2. *Legal Standard*

■ Under Minnesota law, "[a] contract may be rescinded based on mutual mistake, mutual assent to rescission, a unilateral mistake induced by the other party,

or a unilateral mistake where the contract can be rescinded without substantial hardship to the adverse party." *Am. Litho, Inc. v. Imation Cop.*, No. 08–cv–5892(JMR/SRN), 2010 WL 681275, *3 (D.Minn. Feb. 23, 2010).

#### 3. *Analysis.*

■ Here, Appellants advance four arguments: (1) the Bankruptcy Court denied rescission based on erroneous findings of fact; (2) Ashton's unilateral mistake was induced by Appellee; (3) Ashton's unilateral mistake should have resulted in rescission because the Settlement Agreement can be rescinded without substantial hardship to Appellee; and (4) the Bankruptcy Court erred in concluding that Appellants bore the risk of their mistaken belief regarding the scope of the release given their failure to seek clarification.

As to Appellants' first argument, the findings of fact Appellants point to have been fully addressed in the Court's analysis above. *See* Appellants' Br. at 26. Accordingly, the Court finds no clear error and declines to reverse on this basis.

■ As to Appellants' second argument, the Court notes that Appellants failed to argue in the Bankruptcy Court or in Appellants' Appeal Brief that Appellee fraudulently induced Appellants into the Settlement Agreement. *See* AA at 511; Appellants' Br. at 26. This argument was raised for the first time in Appellants' Appeal Reply Brief and is only conclusorily asserted. *See* Appellants' Reply at 16. As such, Appellants have waived this argument. Even if they had not, the Court finds no evidence in the record to support such assertions.

As to Appellants' third argument, this Court finds that the Settlement Agreement cannot be rescinded without hardship to Appellee. Appellants concede that "[i]f the [Settlement Agreement] is rescinded,

the [Appellee] will have to proceed with his fraudulent conveyance claims against [Appellants]." Appellants' Reply at 16. The purpose of the Settlement Agreement was to settle the fraudulent conveyance claims in the interests of the Bankruptcy Estate.

■ As to Appellants' fourth argument, " '[a] party bears the risk of mistake if it is aware, at the time of contracting, that it has limited knowledge of the facts to which the mistake relates, but treats the knowledge as sufficient,' and 'a court may ... allocate risk to a party where reasonable.' " AA at 511 (quoting *HealthEast Bethesda Hosp. v. United Comm. Travelers of Am.*, 596 F.3d 986, 988 (8th Cir. 2010)). The Bankruptcy Court therefore reasoned that "even if there was ambiguity" as to the scope of the release, "[Appellants] bear[ ] the risk of [their] mistake. [Appellants] could have asked [their] attorney or Justice Gilbert to clarify the terms of the release." *Id.* The Bankruptcy Court therefore concluded that even if Appellants were mistaken as to the terms of the release, their unilateral mistake was not a ground for rescinding the Settlement Agreement. *Id.* at 512. The Bankruptcy Court soundly allocated the risk to Appellants. *See HealthEast Bethesda Hosp.*, 596 F.3d at 988.

Accordingly, the Bankruptcy Court's decision not to rescind the Settlement Agreement based on Appellants' purported unilateral mistake is AFFIRMED.

### III. *CONCLUSION*

For the foregoing reasons, the Bankruptcy Court's Settlement Order is AFFIRMED.

It is further ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case.